Argued February 25, reversed and remanded March 18, rehearing denied June 24, 1919.

## DE VOL *v.* CITIZENS BANK.

(179 Pac. 282; 181 Pac. 985.)

**Trusts—Parol Evidence—Statute of Frauds.**

1. Where a sister holding realty in trust for her brother on his order and request signed deed to a buyer in recognition of the parol trust, her testimony that she had held the property in trust for her brother was not inadmissible, as in violation of the statute of frauds, in the brother's action to recover his deposit made to cover paving liens.

**Trusts—Parol Trust—Sale of Property—Proceeds — Right of Beneficiary.**

2. Where a sister held realty deeded to her by her brother under parol trust for his benefit, and joined in execution of his deed to a buyer, the purchase price became the brother's property as much as though he had previously held the legal title.

**Banks and Banking—Deposit to Cover Liens—Part of Price.**

3. Where a sister and brother, the former holding realty under parol trust for the latter, conveyed to a buyer, it must be assumed that money held by a bank as a deposit to cover paving liens primarily belonged either to the brother or sister; it having been a part of the purchase price of the property.

Banks and Banking—Action to Recover Escrow Deposit—Fact and Purpose of Deposit—Questions for Jury.

4. In action by vendor of realty to recover from bank a deposit made with it of part of purchase price in escrow to cover paving liens, whether the money was deposited with the bank by plaintiff, and the purpose for which it was deposited, *held* for the jury under the evidence.

Evidence—Implied Admission—Failure to Answer Letter.

5. Where vendor deposits in bank in escrow part of purchase price as security for paving liens, correspondence between him and bank in relation to transaction is evidence thereof, and where he wrote bank stating transaction in a certain way, and bank did not disclaim, or otherwise answer, vendor's letter, with fact it was not answered, is evidence in nature of an implied admission as to truth of facts stated.

Jury—Action Against Bank—Escrow Deposit—Legal Nature.

6. An action by the vendor of land against a bank with which he had deposited part of the price of the land in escrow as security for paving liens, being in nature of action for money had and received for his benefit, was not a suit in equity, but an action at law, properly tried before a jury.

Evidence—Parol Evidence Affecting Writing—Covenant of Warranty —Escrow Deposit.

7. In action by vendor against bank to recover part of price deposited in escrow as security for paving liens, evidence of contract alleged by plaintiff *held* not inadmissible as varying terms of covenant of warranty in his deed, but related to an independent transaction.

> [As to effect on rights of parties of unauthorized delivery by escrow-holder, see note in Ann. Cas. 1917E, 427.]

Banks and Banking—Escrow Deposit—Question for Jury.

8. In brother's action against bank to recover escrow deposit of part of price of realty conveyed by him and his sister, deposit having been made to secure paving liens, whether property sold and money deposited in bank were property and money of sister, and not of brother, *held* for jury under evidence, a question submissible by proper instruction.

Trial—Submission of Theory to Jury.

9. Where the contention of either party is alleged in the pleadings and sustained by evidence sufficient to go to jury, he has the right to have that theory submitted.

ON PETITION FOR REHEARING.

Estoppel—Testimony of Witness of Adverse Party.

10. A party in a case cannot be estopped or concluded by the mere testimony of a witness offered by the adverse party.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is an action to recover $1,000 alleged to have been deposited by the plaintiff with the defendant,

to be held by it as a sort of stakeholder, in a transaction between the plaintiff and Lambert & Whitmer, who had purchased from the plaintiff and his sister certain real estate in the City of Portland, in relation to the payment of certain paving liens, which had been assessed against the property by the city.

About September 1, 1905, the plaintiff and his sister, Mary De Vol, conveyed to A. W. Whitmer for Lambert & Whitmer, the property in question. At the time the legal title to the property was in the name of Mary De Vol; but it is claimed by the plaintiff that she was merely the trustee of the property for George De Vol, who is claimed by the plaintiff, to have been the sole beneficial owner.

. At the time of the transaction there were paving assessments standing against the property, to the amount of about $845, which were then in litigation between the De Vols and the city.

The De Vols executed a warranty deed to the property, and, in addition thereto, a certain sum was held out of the purchase price and deposited in the defendant's bank, to be held by it in relation to the aforesaid assessments, but the terms and conditions under which it was to be held are in controversy between the parties, as will hereafter appear. The exact amount held out is also in controversy, plaintiff claiming it was $1,000, the defendants, that it amounted to but $950. This deposit is the subject of this litigation.

Plaintiff claims it was deposited under an agreement and understanding that it should be held by the bank until the litigation was settled, and that the plaintiff was to have ample time to litigate the same. The defendant, on the other hand, claims it was to be held as security to satisfy the liens, and that if said improvement ever became a valid charge or lien against

said property, either by assessment or reassessment, the deposit should be applied to satisfy the same. The defendant also claims that the purchase of the land was made from Mary De Vol, and·that the arrangement for the deposit at the bank was also made with her and not with the plaintiff, George De Vol. It is undisputed that it was also agreed at the time that pending the settlement of the liens, the deposit was to draw interest from the bank, at the rate of 4 per cent per annum.

A short time after this transaction, Lambert & Whitmer sold the real property, conveyed to them by the De Vols, to one James Monks, who gave to them notes and a mortgage for about $5,000 of the purchase price. These notes and the mortgage were afterwards transferred by Lambert & Whitmer to one Clark and were all paid off by Monks, except about $1,100, which was held back by him under an agreement with Lambert & Whitmer, that he might so hold the same as security for the payment of these liens. On September 16, 1908, the defendant applied, or permitted Lambert & Whitmer to apply, the De Vol deposit upon the notes of Monks to Lambert & Whitmer, which had been transferred to Clark.

The litigation over the assessments was continued in one shape and another for many years, and never was disposed of. The assessments, which were pending at the time of the conveyance from De Vol to Whitmer, were set aside by the court, but the city proceeded to make a reassessment. The plaintiff, through his attorneys, continued to litigate this reassessment, both by writ of review and by appeal from the assessments. The writ of review was finally decided in favor of the city, but the appeal was still pending. In 1915 Monks, who was then the owner of the property, without au-

thority from or arrangement with DeVol, compromised the assessments and paid them off, thereby releasing the property from the city's liens upon the same.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Arthur M. Dibble.*

For respondent there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. George N. Woodley,* with an oral argument by *Mr. Duniway.*

BENNETT, J.—1. The first question presented by the appeal is whether or not the court erred in permitting George De Vol and his sister, Mary De Vol, to testify that while the legal title to the property was in her name, she held it under a parol trust, and that the plaintiff was really the beneficial owner. This question is presented by assignments of error 1, 2, 3, 4, 5 and 6. All of the questions presented in these assignments are fully covered by assignment 3, where Mary De Vol was asked:

"State fully why George De Vol deeded said property to you. What, if any, consideration did you pay him for doing so, and whether you owned the property or did you hold only the legal title to said property for said George De Vol?

"A. He deeded said property to me so if he should fail in business we would always be sure of having a home. I paid no consideration whatever to him for deeding the property to me, and I did not own the property after I received the deed to it. I only held the legal title to said property for my brother, who was in possession of the same. * * *"

It is strongly urged on behalf of appellant, that this was an attempt to prove a trust by parol evidence, and was in violation of the statute of frauds, and that Mary

De Vol, and not the plaintiff, must be conclusively assumed to have been the owner of the real property deeded by her and her brother, and therefore also, of the money, which was part of the purchase price.

We do not think this contention can be sustained. It is conceded that she joined with her brother in executing the deed to Whitmer. Both Mary De Vol and her brother testified that she did this at his request, and she testified that she had nothing to do with the transaction except to sign the deed, and that both the property and the money arising from its sale really belonged to her brother, plaintiff herein. If this was true, the transaction between Mary De Vol and her brother, became in the nature of an executed trust. She held the property subject to his use and disposition, and, upon his order and request, she signed the deed to Whitmer in full recognition of the parol trust. Under such circumstances, and when the trust has been so acknowledged and executed, the reason for the rule against admitting parol evidence fails, and when the reason fails the rule fails with it.

In Perry on Trusts it is said:

"And the statute of frauds will be satisfied if the trust can be manifested or proven by any subsequent acknowledgment by the trustee, as by an expressed declaration, or any memorandum to that effect; or by letter under his hand, or by his answer in chancery, or by his affidavit": Vol. 1 (6 ed.), § 82.

And in the work of Mr. Beach on the same subject, it is said:

"Where the purpose of the grantor to create a trust is not set forth in the instrument by which the estate is conveyed, it may be adequately declared and proved by the testimony of the trustee to whom it is conveyed, or who is the holder of the legal title. This declaration may be made at the time of the conveyance or at a later date": Beach on Trusts, § 39.

And this is the doctrine announced by our court in *Richmond* v. *Bloch,* 36 Or. 594, 595 (60 Pac. 385, 386), in which it is said:

"The adjudicated purpose of the statute, however, is not to declare such a parol or verbal trust illegal, and therefore a nullity. But the trustee may elect to perform the conditions thereof, notwithstanding the absence of compulsory power; and the courts will, if he chooses to act upon his verbal promise, protect him in the execution of the trust, and, as far as possible, will protect the beneficiaries in the enjoyment of the fruits of its execution, and when once the trust is executed it cannot be revoked."

And again building upon and quoting with approval from *Sieman* v. *Austin,* 33 Barb. (N. Y.) 9, the court says:

"The law refuses its aid to enforce agreements creating trusts or charges upon lands when they rest altogether in parol, not because the trusts are therefore void, but because it will not permit them to be proved by such evidence. But when a person who has received the title to lands purchased for the benefit of another, although without having declared the fact in writing, recognizes and fulfills the trust, it is not the duty of the court to deny its existence. * * If he fulfills the trust by conveying the property to the true owner, there is no rule of equity which will impeach the title thus acquired."

And again, quoting from an Indiana case, *Hays* v. *Reger,* 102 Ind. 524 (1 N. E. 386):

"This statute, as also the statute of frauds, was enacted, not that parties might avoid trusts which were executed, but rather to enable them, in case of an attempt to enforce such trusts while they remain executory, to insist on certain modes of proof in order to establish them. The trust having been executed, we need not determine whether it was one arising by implication of law, or whether it was an express trust.

Whether it was one or the other, the parties having voluntarily executed it, the authorities are that it may be proved by parol for the purpose of showing that the apparent owner had no interest which was subject to the lien of a judgment against him.''

Neither the statute of frauds nor our similar statutes, were ever intended to prohibit men' and women from being honest; or from observing or carrying out in good faith their moral obligations, if they choose to do so.

2. If, as testified by the plaintiff and his sister, George De Vol was the real beneficial owner of this property, and Mary De Vol saw fit to join in the execution of this deed at his request, for the purpose of carrying out her moral obligation to dispose of the property, according to his direction, there was no reason why she should not do so, and under such conditions the purchase price would become his property, just as much as though he had previously held the legal title.

There was a motion for a nonsuit, and also a motion for a directed verdict. The order of the court denying these motions makes up appellant's assignments 8 and 10, and in support thereof it is urged that there is no competent evidence that the contract alleged was ever made, and no competent evidence that plaintiff ever made any deposit with defendant at all, but we think there was no error in refusing these motions.

3. The evidence of the plaintiff as to what occurred at the time of the transaction is not very clear, but there can be no question that the money was actually deposited in the bank, and accepted by the bank as a deposit, and that it was to be held with some relation to these liens. It must also be assumed, that this money primarily belonged to one or the other of the

De Vols, because it was a part of the purchase price of their property.

In addition to this are the letters from De Vol to the bank and to Lambert, who was its cashier or president. The first of these letters is dated November 6, 1910, and is as follows:

"1695 Adeline St., Oakland, Cal.
"Nov. 6th, 1910.

"Pres. of Citizens Bank,
"Portland, East Side, Or.

"Dear Sir:

"Not knowing what the street assessment would be on Pettygrove and 17th Sts., Portland, Or., *I left $1,000 in the above Bank* in the fall of 1905. Will you please let me know if the assessment has been settled or what has been done since that time, and oblige

"GEORGE DE VOL."

The second letter was dated January 14, 1915, and is as follows:

"2339 Adeline St., Oakland, Cal.
"January 14th, 1915.

"Mr. Lambert:

"Will you please let me know what has been done about the reassessment of 17th St.? *You remember I left $1,000, One Thousand dollars in your bank at 4%* in 1905 *in case the city should win the suit.* I, with others, had signed over to Ralph Duniway at that time, as it is now 10 years I should think the case should be settled.

"Please let me hear from you soon.

"Very truly,
"GEO. DE VOL."

The third was written January 23, 1915, as follows:

"2339 Adeline St., Oakland, California.
"Jan. 23rd, 1915.

"Mr. Lambert.

"Dear Sir:

"I wrote you not long ago, and have not heard from you, about the $1,000 at 4% *I deposited in the Citizens*

*Bank as collateral in case the city won the suit* over the re-assessment of 17th St.   I want to have a settlement and hope you will let me hear immediately from you.
"Very truly,
"GEORGE DE VOL."

The fourth was dated May 16, 1915:

"2339 Adeline St., Oakland, Cal.
"May 6, 1915.

"Dear Sir:
"*I left $1,000 at 4 % in Citizens Bank in Fall of 1905,* this amount was left in escrow of the assessment of 17th and Pettygrove St.   It was then in the hands of a lawyer to be settled.   A. W. Lambert was then Pres. of the Bank and surely he remembers the transaction, as he bought the property.   I wish to know if your books show that I paid that money into the Bank.
"Please let me know soon, and oblige
"GEORGE DE VOL."

It is admitted that these letters were received by the parties to whom they were addressed, and indeed they were produced at the trial by the *defendant.*   The plaintiff testified that he received *no answers to these letters,* except to the one of May 6th, which was dated May 11, 1915, and is as follows:

"Portland, Oregon, May 11, 1915.
"Mr. George De Vol.,
"2339 Adeline St.,
"Oakland, Cal.

"Dear Sir:
"This is in reply to your letter of May 6th regarding *$1,000.00 left here in 1905.*   Mr. Dunniway has recently written you a letter regarding the status of this property.   The $1,000.00 you mention was applied on the note held by Dr. E. G. Clark.
"Yours truly,
"CITIZENS BANK.
"By M. REDMOND."

4. The defendant was challenged to produce any carbon copies of answers to the other letters which it might have, and none were produced. There was no evidence of any other answers having been written, except the evidence of Mr. Lambert that he had written one letter in long hand and kept no copy. These letters, with the answer to the one, and the fact that the others were unanswered (if the jury so found) together with the oral testimony of Mr. De Vol, were sufficient evidence to go to the jury tending to prove that the money was deposited with the Citizens Bank by George De Vol and the purpose for which it was deposited.

5. It is well settled that in a transaction of this kind, the correspondence between the parties, in relation to the transaction, is evidence thereof, and that where one party has written to the other, stating the transaction in a certain way, and the other party has made no disclaimer, or other answer to the letter, the letter itself, with the fact that it was not answered, is some evidence, in the nature of an implied admission, as to the truth of the facts stated therein. Altogether, there was sufficient evidence to justify the submission of the issues to the jury.

6. In this connection it is urged by appellant that the cause was essentially a suit in equity rather than an action at law, but we cannot see that this contention was well taken. The action was upon an implied contract to pay over the money in question to the plaintiff when the property should be clear of the liens in question. It was in the nature of an action for money had and received for plaintiff's benefit. It was merely an action against an ordinary stakeholder. If the defendant had kept the money in its hands it might perhaps by a proper pleading have presented to the court the adverse claims to the money of De Vol, by Lambert

and Whitmer, and have had that matter adjudicated; but there was no attempt to present this question. In the condition of the pleadings we think it was purely an action at law and was properly tried before a jury.

7. Under assignments of error 7, 11, 18, 19, 20, 21 and 22, it is contended that the effect of the contract alleged and urged by the plaintiff is to vary the terms of the covenant of warranty in the deed. We do not think this contention can be supported. The arrangement in regard to the holding back of this money had nothing to do with the covenants of warranty but was an independent transaction. The money was kept out and deposited with reference to the particular liens, which were then in litigation. The covenant of warranty was against *all* encumbrances. If this money had been paid over to the plaintiff, the grantee under the deed would still have had his action for any breach of the warranty, whether that breach might result from these particular liens, or any other liens; and whatever disposition might be made of this particular fund, the warranty in the deed would be left entirely undisturbed.

It was not, therefore, an attempt to vary or change the terms of the warranty that was contended for by the plaintiff. It was a contract in regard to this particular fund, which was held out under a special arrangement to provide for the satisfaction or discharge of these particular liens.

8, 9. The defendant asked the court to instruct the jury as follows:

"Plaintiff alleges that he deposited the money with defendant, and defendant denies the same and alleges the money was deposited by Mary De Vol."

And again:

"If you find from a preponderance of the evidence that the money deposited in the bank was the money of Mary De Vol, then plaintiff cannot recover."

By these instructions the defendant sought to have submitted to the jury the question of whether the arrangement as to the money deposited was made by Mary De Vol or the plaintiff, and as to which of them, the money belonged. These instructions were refused by the court, and in this we think there was error. If the money actually belonged to Mary De Vol, and the contract of the bank was to pay it to her and not to plaintiff, of course the plaintiff must fail in this action, as there is no claim of any assignment. The issue was directly made by the pleadings and there was evidence to sustain both contentions.

As we have seen, the evidence of George De Vol and his sister, that he was the real owner of the land and the money, and that the contract was made with him, was entirely competent, yet it was not necessarily conclusive.

The legal title to the property was confessedly in Mary De Vol, and some inference or presumption would naturally arise that the property was hers, and that, therefore, the money also belonged to her. Whether this presumption was overcome by the testimony of George De Vol and his sister was for the jury.

Besides this, the defendant offered and introduced affirmative evidence that the contract and arrangement in regard to this money was with Mary De Vol.

The contract, or receipt for this money, offered by defendant is as follows:

"$950.00.        Portland, Oregon, October 31st, 1905.
"Received of Mary De Vol the sum of nine hundred fifty dollars, to be held as security for the payment of the City Liens against lots 1 and 4 block 235 in Couch

Addition to the City of Portland, Multnomah County, Oregon, pending the result of the present litigation.

"The liens are as follows:

For improvements 17th St. lot 1.....$401.70
For improvements 17th St. lot 4..... 444.03

Total without costs or interest.......$845.73

"Also, May 24th, 1905, Tanner Creek Sewer:

Lot 1 said block....................  9.80
Lot 4 said block....................  9.80

Total ........................19.60

"The sums for improvement of 17th Street to be held by us until the said litigation is settled by court or compromised, to bear interest at 4% per annum from date until paid.

"The said $19.60 and interest and costs for said sewer to be paid by us within five days from this date.

"And we further promise to pay the surplus over and above said liens to said Mary De Vol or her order within five days after notification that said 17th Street improvement is adjudicated by the courts or ready for compromise by the parties thereto.

"Citizens Bank.
"By A. W. Lambert, Cash."

Lambert testified as a witness for the defendant that this contract was written out at the time of the transaction, and that one copy of it was then and there given either to Mary or George De Vol. This evidence was amply sufficient to go to the jury as supporting defendant's contention in the case.

The proposition that where the contention of either party is alleged in the pleading, and sustained by evidence sufficient to go to the jury, he has a right to have that theory submitted, is too well settled to merit the citation of authorities. We cannot find that this issue in the case was anywhere distinctly submitted to the jury, and the defendant having asked for specific in-

structions in that regard, and excepted to their refusal, a new trial must be granted.

Another instruction in relation to this matter asked for by the defendant and refused by the court is as follows:

"And in this connection I instruct you that the money deposited in the bank, whatever the sum thereof was, is admitted to have been withheld as a part of the purchase price of the property sold by the De Vols to Whitmer, and I instruct you that the property so sold *was Mary De Vol's property and that said money so deposited was, therefore, Mary De Vol's.*"

For reasons already discussed there was no error in refusing this instruction.

Reversed and remanded for new trial.

REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.

———————

Rehearing denied June 24, 1919.

PETITION FOR REHEARING.

(181 Pac. 985.)

On petition for rehearing. DENIED.

*Mr. Ralph R. Duniway* and *Mr. George N. Woodley,* for the petition.

*Messrs. Malarkey, Seabrook & Dibble, contra.*

In Banc.

BENNETT, J.—10. It is urged in the petition for rehearing that Mary De Vol is estopped by her testi-

mony in this case from afterwards commencing a proceeding to recover the money in question in an action on her own behalf, and, therefore, it is reasoned that on this account an estoppel of the *defendant* from making the claim that the money belonged to her is in some way brought about, and that her testimony in regard to the ownership of the money is therefore conclusive upon the defendant.

The learned attorney clearly confuses what might work an estoppel of Mary De Vol, with what would be necessary to create an estoppel on the part of the defendant.

It would be a startling and unusual doctrine if a party in a case could be estopped or concluded by the mere testimony of a witness *offered by the adversary party*.

Much stress is placed upon the opinion of this court in *Gardner* v. *Kinney,* 60 Or. 292 (117 Pac. 971), but upon a careful examination of that case it will clearly appear that it is in no way in point upon the question here presented.

In the Gardner case the plaintiff was an agent of the defendant and claimed to have authority to employ labor and pay the employees. He had employed one Johnson and paid him and was asking to have that claim added to his own. Both the plaintiff and Johnson testified that he looked to plaintiff for his pay. The question was not *taken away from the jury,* as in this case, but was submitted to the jury, and the jury found in favor of the plaintiff upon the issues. It was in relation to such a case and *arguendo* only that the court used the language about estoppel referred to. If the question in this case had been submitted to the jury, and that body had found in favor of the plain-

tiff upon that issue, basing its verdict partly or wholly upon the testimony of Mary De Vol, it may well be that, as said in the Gardner case, she would have been estopped from bringing another suit for the same money; having, by her evidence, caused the defendant to once pay it to George De Vol, but this could in no way work an estoppel *upon the defendant,* as to the defense pleaded and insisted upon *in this action.*

The defendant did not know when it made its defense what would be the claim of Mary De Vol, or what she would testify to; and having made that defense, and offered ample evidence to support it, it had the right to have the question submitted to the jury, and the court had no right to say that her evidence was conclusively true, or to disregard the evidence to the contrary offered by the defendant.

It may be unfortunate, as contended by respondent, that the case should be reversed upon this ground. But for this the defendant is not to blame. The respondent had it in his own hands to have the question properly submitted to the jury at the first trial and passed upon and decided. Apparently he opposed this being done, or at least he did not specifically consent to its being done. If he had joined with the defendant in asking to have this issue submitted to the jury, the court would have submitted it. Plaintiff is not now in a position to complain because the case has to be sent back, so that the question can be properly and regularly submitted.

REVERSED AND REMANDED.    REHEARING DENIED.