Submitted on brief September 27; modified December 30, 1932

WAKEFIELD, FRIES & CO. *v.* SHERMAN,
CLAY & CO.

(17 P. (2d) 319)

*Sheppard & Phillips* and *L. J. Balbach,* all of Portland, for appellant.

*Allen H. McCurtain* and *Donald E. Long,* both of Portland, for respondent.

RAND, J. This is an action to recover on quantum meruit for services alleged to have been performed by plaintiff as a real estate broker. The cause was tried by the court without a jury and defendant appeals from the judgment. At the close of plaintiff's testimony, defendant moved for a nonsuit. The motion was denied and the correctness of this ruling is the main question for decision.

According to plaintiff's testimony, on February 28, 1929, the defendant, a California corporation, was occupying a building in which it was conducting a store

on the corner of Sixth and Morrison streets in the city of Portland under a lease which did not expire until September 2, 1932, and which obligated it to pay an annual rental of $50,000, and was desirous of becoming released from its obligations thereunder. To that end, it employed plaintiff to negotiate with the Meier & Frank Company and ascertain the terms under which that company would take over said lease and assume defendant's obligations thereunder. On said day, A. C. Clausen, one of plaintiff's agents, was called to the office of the defendant at its said store by R. E. Robinson, defendant's northwest manager, and was employed as an agent of plaintiff to enter into such negotiations and secure terms from the Meier & Frank Company. At that meeting, not only Robinson but P. T. Clay, the president of the defendant company, and Sidney Johnson, its local manager of the Portland store, were present. Plaintiff was informed that whatever action the Meier & Frank Company would agree to would be tentative only and would have to receive the approval of defendant's board of directors at San Francisco before the same would become binding upon defendant. Clausen thereupon wrote a letter to the Meier & Frank Company and delivered the same personally to the officers of that company, stating that any agreement reached between the parties would have to be ratified by the board of directors of the defendant company before becoming binding upon the defendant. The Meier & Frank Company then submitted a writing to Clausen, stating the terms upon which it would be willing to enter into a contract to take over said lease and a meeting was thereupon arranged for by Clausen and was on that day held at the offices of the Meier & Frank Company, at which were present the three officers of the defendant company above named and

also Clausen and certain officers of the Meier & Frank Company, and at said meeting an agreement was entered into subject to its subsequent ratification by defendant's board of directors. The agreement was later ratified by defendant's board of directors and the Meier & Frank Company took possession of the premises and assumed defendant's obligations under the lease upon the identical terms that had been so agreed upon.

Under these facts, defendant contends that the officers of the defendant company present at the meeting and particularly Robinson, who spoke for the company and made the contract, had no ex officio authority to employ plaintiff to perform said services and, therefore, the motion for nonsuit should have been sustained.

■■ It is not necessary for us to determine whether the authority of Robinson, and of the other officers present, to enter into the contract should be inferred from the offices held by them for there is other testimony showing that Robinson did have full authority to make the contract. This fact is proven by his own testimony. He was a competent witness to establish that fact. On cross-examination, he testified as follows:

"Q. And your Vice-President, knowing all about this, wrote a letter to Meier & Frank Company, accepting the terms that Mr. Clausen had gotten for you; and that you had had Mr. Clausen change for you, to April 1st; isn't that a fact? A. Yes. Q. Now, the fact is, Mr. Robinson, you had authority to ask Mr. Clausen to see Meier & Frank and to see George Joseph and to get that commitment in writing, didn't you? A. Yes. Q. You did have that authority? A. Yes. Q. But you didn't have any authority to pay him anything for it? A. No, because we didn't close any deal, and it had to be closed in San Francisco, if there was any deal."

Greenleaf says:

"Where the authority was verbally conferred, the agent himself is a competent witness to prove it; but his declarations, when they are no part of the res gestae, are inadmissible." 2 Greenleaf on Evidence, (16th Ed.) p. 50.

The same rule is stated in 10 Encyc. of Evidence, pages 14 and 15, as follows:

"Where an agency can be established by parol, the agent is a competent witness to prove it.   *   *   *   The testimony of an agent is admissible to establish the extent of his authority. It is also held admissible to show that he had no authority; although the contrary has been held where the facts were sufficient to work an estoppel."

■■ This being an action at law and not a suit in equity, the finding by the learned trial judge that Robinson did have authority to employ plaintiff to perform the services alleged in the complaint is, by force of section 2-503, Oregon Code 1930, "deemed a verdict," and since the evidence referred to sustains the finding, it is binding upon this court upon this appeal. Robinson was a hostile witness to plaintiff, and his testimony shows that he had authority to employ plaintiff's agent Clausen to enter into such negotiations and his testimony does not dispute the fact that the authority existed, whether the results reached through such negotiations were subsequently ratified or not. Having authority to employ Clausen implies the authority to contract to pay for the services performed whether the results obtained were subsequently ratified or not. This renders unnecessary any further discussion of other objections urged in support of defendant's contention that there was no evidence of authority upon the part of Robinson to enter into the contract.

▉ Plaintiff was permitted, over defendant's objection, to introduce carbon copies of two letters, the same being plaintiffs exhibits 5 and 6, written by plaintiff to defendant, enclosing a statement of its account for the services rendered and requesting payment of the claim. No answer seems to have been made to either of these letters and defendant contends that the court erred in receiving them in evidence. We think that the objection to their admission should have been sustained as they were merely a demand for payment and, in this case, no demand for payment before suit is necessary to be made. Except under special circumstances, unanswered letters of this character are not admissible for the purpose of showing an admission of liability on the part of the addressee. In *Seevers v. Cleveland Coal Co.*, 158 Iowa 575 (138 N. W. 793, Ann. Cas. 1915D, 188), plaintiff was seeking to secure a judgment for commissions for the sale of coal lands alleged to have been sold at defendant's request, and for that purpose introduced in evidence unanswered letters addressed to defendant. The court, in holding that the letters were not admissible, said:

"The mere fact that letters were received and remain unanswered has no tendency to show an acquiescence of the party in the facts stated in them. A party is not to be driven into a correspondence of that character to protect himself from such consequences. In the case of Firbee v. Denton, 3 C. & P. 103, the plaintiff had sent a letter to the defendant, demanding a sum of money as due to him, to which no answer was returned. On the offer to prove its contents, &ast; &ast; &ast; Lord Tenterton, C. J., observed: 'I am slow to admit that. What is said to a man before his face, he is in some degree called on to contradict, if he does not acquiesce in it; but the not answering the letter is quite different, and it is too much to say that a man, by

omitting to answer a letter, at all events admits the truth of the statements that letter contains. I am of opinion,' he observed, 'that this letter cannot be read.' "

In the case of *Learned v. Tillotson,* 97 N. Y. 1 (49 Am. Rep. 508), the rule is stated as follows:

"It may well be that under most circumstances what is said to a man to his face, which conveys the idea of an obligation upon his part to the person addressing him, or on whose behalf the statement is made, he is at least in some measure called upon to contradict or explain; but a failure to answer a letter is entirely different, and there is no rule of law which requires a person to enter into a correspondence with another in reference to a matter in dispute between them, or which holds that silence should be regarded as an admission against the party to whom the letter is addressed. Such a rule would enable one party to obtain an advantage over another and has no sanction in the law."

The supreme court of the United States has enunciated the same rule in *A. B. Leach & Co. v. Peirson,* 275 U. S. 120 (48 S. Ct. 57, 72 L. Ed. 194, 55 A. L. R. 457). In this case the letter which was offered in evidence was written by the plaintiff, Peirson, to Leach & Co., with reference to certain bonds and contained the statement, "It was agreed by Mr. Mather that at any time I so desired you would take them off my hands at cost 98. I have need of some money and will avail myself of this privilege. When shall I deliver them to you?" Mather was a salesman of the bond house. The letter was unanswered and the bond house contended that it was inadmissible in evidence, being a self-serving document. That contention was upheld by the supreme court. Mr. Justice Holmes delivered the opinion, and said:

"A man cannot make evidence for himself by writing a letter containing the statements that he wishes

to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore, a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission. [Citing authorities.]

"There were no circumstances in this case to take it out of the general rule. The letter might have been admissible as a demand if a binding contract had been proved, but until evidence of Mather's authority was given the demand was immaterial."

■ We think that the foregoing cases establish the rule that where letters do not form a part of the res gestae and are not part of a mutual correspondence between the parties they cannot be admitted in evidence as an implied admission on the part of the party who fails to answer them.

In *De Vol v. Citizens Bank*, 92 Or. 606 (179 P. 282, 181 P. 985), it was held that in a transaction such as was involved there the correspondence between the parties in relation to the transaction is evidence thereof, and that, where one party has written to the other, stating the transaction in a certain way, and the other party has made no disclaimer, or other answer to the letter, the letter itself, with the fact that it was not answered, is some evidence, in the nature of an implied admission, as to the truth of the facts stated therein. That probably was a correct statement of the rule of law applicable to the facts in that case but we think the principle ought not to be extended to cases of this character and that, because of the dissimilarity of the facts, we ought not to apply the rule there stated.

In *Ross v. Reynolds*, 112 Me. 223 (91 Atl. 952), cited by plaintiff, it is held that the mailing of a letter prop-

erly addressed is prima facie evidence of delivery by due course of mail to the addressee and that, if no reply is made, that fact unexplained may afford an inference that the matter stated in the letter is true, and, therefore, the unanswered letter was admissible in evidence. The facts of that case are not sufficiently stated in the opinion to enable us to say whether, under the facts similar to those involved here, the same ruling would have been made. In any event, we do not deem it authoritative under the particular facts of this case.

■ Although we think that the court erred in admitting these letters in evidence, yet we are of the opinion that no substantial prejudice resulted to the defendant therefrom for the reason that there was other legal evidence sufficient to support the finding.

■ The general rule in this state, applicable to the trial of law actions by the court without a jury, is that error in the admission of evidence is not ground for reversal if there is sufficient legal evidence to support the judgment, the presumption being that the court disregarded the incompetent evidence and decided the case on the legal evidence only: See *Brownell v. Heitman,* 125 Or. 515 (266 P. 1067).

■ Defendant also objects to the amount of the judgment and contends that the evidence fails to sustain a judgment for the amount rendered. The judgment rendered in the case was for $4,500. This was an action on quantum meruit. The evidence shows that the services were not reasonably worth that sum and that the amount allowed is excessive under the evidence. A careful consideration of the entire record convinces us that the amount of the judgment should be materially reduced and that $2,000 would be a reasonable compensation for the services rendered. The judgment, therefore, will be modified accordingly.

■ In this connection it will be borne in mind that this case was not tried by a jury and, therefore, the constitutional inhibition contained in Article VII, section 3, does not apply and we are at liberty to disregard any finding made by the trial court if the evidence is not sufficient to sustain the finding. While such finding has the force and effect of a verdict, the constitutional provision referred to has no application to it.

It is, therefore, ordered that the judgment appealed from be modified and that the plaintiff have and recover judgment against the defendant for the sum of $2,000 and for its costs and disbursements in the lower court; but without costs or disbursements to either party in this court.

The judgment as so modified is affirmed.

---

BELT, J., concurring in part:

I concur in the opinion of Mr. Justice Rand excepting that part thereof relative to reduction in the amount of the judgment.

There is substantial testimony to the effect that the services rendered were reasonably worth $4,500. Witnesses Staver, Guild, and Clausen so testified. The finding of the court in an action at law is equivalent to the verdict of the jury. It is not for this court to pass upon the weight of the evidence. The judgment, in my opinion, should be affirmed and not modified.

Rossman, J., concurs.