Argued September 6; reversed October 22, 1935

# HARDER *v.* HASTORF

(50 P. (2d) 133)

*Arthur H. Lewis,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for appellant.

*William G. Smith,* of Portland, for respondent.

BEAN, J. Defendant assigns that the court erred in making the following findings: That the defendant agreed to take over from plaintiff and his assignor, P. S. Lord, their subscription to the capital stock of the Plumbing & Heating Sales Corporation; "that defendant agreed to pay plaintiff, and his assignor P. S. Lord," therefor; that the interest of P. S. Lord in the net assets of Hastorf-Lord, Inc., is the sum of $4,249.02; that the interest of plaintiff J. M. Harder in the net assets of the Hastorf-Lord, Inc., was $4,817.99, and in rendering a judgment accordingly; that defendant accepted the computation or apportionment made for finding the equities in the Hastorf-Lord, Inc., as shown by Exhibits 3 and 6.

The question for the determination of the court is: Does the testimony support the findings and judgment of the trial court? Defendant Hastorf objected and excepted to the findings of fact as made by the trial court and submitted findings of fact and conclusions of law in conformity with defendant's contention. In *Wakefield, Fries Co. v. Sherman, Clay & Co.*, 141 Or. 270, 279 (17 P. (2d) 319), the court records the following language: "we are at liberty to disregard any finding made by the trial court if the evidence is not sufficient to sustain the finding". See *Maddox v. McHattan*, 111 Or. 324 (224 P. 833, 226 P. 427).

We consider only the testimony on the part of plaintiff. It is the claim of plaintiff and his assignor, P. S. Lord, that defendant Hastorf practically agreed to take the stock in the Plumbing & Heating Sales Corporation, which Harder and Lord had agreed to purchase, "off their hands," and, as we understand the allegations of the complaint and their testimony, he was to pay them the amount of their interest in the old Hastorf-Lord, Inc. This is the basis of the claim and right of plaintiff and his assignor P. S. Lord.

About June, 1931, these parties met for the purpose of determining "the respective interests of each of said three individuals in the assets turned over by said Hastorf-Lord, Inc.". While they describe the combined interest of the three individuals as "in the assets turned over by said Hastorf-Lord, Inc." to the new corporation, it is evident that they did not intend to relinquish their claim to the personal property that was turned back from the Plumbing & Heating Sales Corporation to the Hastorf-Lord, Inc., or paid for; neither did they intend to ignore the indebtedness of Hastorf-Lord, Inc. What it was incumbent upon them to do, and apparently what they attempted to do, was to find the net value of the assets of the Hastorf-Lord, Inc., taking into consideration the $22,500 worth of personal property turned over to the sales corporation and other personal property, if any, and accounting for the merchandise that was turned back to Hastorf-Lord, Inc., or paid for by the sales company, and also taking into consideration the indebtedness of the Hastorf-Lord, Inc., and any good accounts that might be due that company. Instead of finding such net assets or worth of the Hastorf-Lord, Inc., the bookkeeper took as the basis the $22,500 of personal property that was turned over to the sales company. Three exhibits

were offered in evidence by plaintiff bearing particularly upon the interests of the three parties that met at the home of Mrs. Julia McCarty, who had been bookkeeper for the Hastorf-Lord, Inc., for about three months, and she attempted to figure out the interests of the three "partner stockholders" as they were termed.

Plaintiff's Exhibit No. 3, a statement which Mrs. McCarty is said to have prepared, was introduced in evidence without calling her as a witness and practically without any explanation of a page of solid figures. No one suggests that the statement is correct, but it is claimed that the defendant agreed to the same. It was intended to be a statement of the interests of each of the three parties in the Hastorf-Lord, Inc., which appear on the document as follows:

Debts: Hastorf, $4,646.88; Harder, $1,019.94; Johnson, $2,217.38, Total $7,884.20. Amount owed to Hastorf-Lord, Inc., by P. S. Lord, $2,589.15. Mr. Lord's interest is figured as follows: Amount of stock of merchandise, $8,942.70, less $2,589.15, amount owed Hastorf-Lord, Inc., $6,353.55, less $3,133.60, share of total debts, leaves $3,219.95, plus $1,029.07, Lord's share of amount owed to Hastorf-Lord, Inc., equals $4,249.02, as the interest of Lord in the assets of the Hastorf-Lord, Inc. Mr. Harder's statement is as follows: Amount of stock of merchandise, $4,399.89, less share of total debts, $1,541.76, leaves $2,858.13, plus share of amount owed to Hastorf-Lord, Inc., $506.31, $3,364.44, plus the amount owed by the firm of Hastorf-Lord, Inc., $1,019.94, equals $4,384.38, plus $433.61, Johnson's share owed above, $4,817.99. Mr. Hastorf's statement is as follows: Amount of stock of merchandise $9,157.41, less share of total debts, $3,208.84, leaves $5,948.57, plus $1,053.77, Hastorf's share of amount owed to Hastorf-Lord, Inc.,

equals $7,002.34, plus amount owed by Hastorf-Lord, Inc., $4,646.88, equals $11,649.22, Mr. Hastorf's stock, plus $1,783.77, Johnson's, from Lord and Hastorf, $13,433.99.

Plaintiff's Exhibit No. 1 explains the statement of Hastorf's interest, as follows:

| | | |
|---|---|---|
| Personal account | | $15,006.71 |
| Proportion of selling price | $12,405.90 | |
| Less credit recd from P. & H. | 3,248.49 | |
| Account to Hastorf-Lord for | 9,157.41 | |
| "Deduct same from amount owed to Hastorf by Hastorf-Lord | | 9,157.41" |
| | | 5,849.30 |
| from which is deducted money | | |
| received on Burns Hotel | $ 447.02 | |
| money received on Postill job | 1,144.00 | 1,591.02 |
| Balance | | 4,258.28 |

amount due to Hastorf from the Hastorf-Lord, Inc., so it will be observed that the $9,157.41 is subtracted from his interest and then added to it, making the amount the same as if he had not been credited anything for his interest in the stock of merchandise or paid the full amount due him from Hastorf-Lord, Inc. This error was carried into plaintiff's Exhibit No. 3, which is relied on by plaintiff, the same amount of merchandise being mentioned in Hastorf's statement and the same amount owed by the Hastorf-Lord, Inc., to him, as shown in plaintiff's Exhibit No. 1. Therefore, Hastorf's interest in the assets of Hastorf-Lord, Inc., was erroneously decreased according to the bookkeeper's figures in the sum of $9,157.41. This appears upon the face of the exhibits introduced in evidence by plaintiff. It is not enough to find the exact amount of interests of

J. M. Harder, plaintiff, and P. S. Lord, his assignor, in Hastorf-Lord, Inc.; it is also necessary to find the amount of the interest of H. C. Hastorf, as the interest of each in the assets of Hastorf-Lord, Inc., should be in the proportion that the interest of the one bears to the total amount of assets. For example, if Lord's interest in the assets of Hastorf-Lord, Inc., were $4,000, and the interest of Harder in the same were $5,000, and the interest of Hastorf in the same were $7,000, then Lord would be entitled to 4/16 of such assets and should be paid by Hastorf that amount for his interest in the stock, according to the claim of plaintiff; Harder would be entitled to 5/16 of such assets, and Hastorf would be entitled to 7/16. When Harder said that Hastorf told him if he would give him time "he would pay me for my interest just as it appears on Hastorf-Lord, Inc.", we think he meant he would pay him for his interest in the Hastorf-Lord, Inc., and that this was the understanding upon which the minds of the parties met. That is what they endeavored to figure out, but they signally failed.

When the parties met to endeavor to make an adjustment, the bookkeeper had plaintiff's Exhibit No. 3 prepared, and she made copies for the parties. Exhibit No. 6 is a copy of Exhibit No. 3, except there is a note of explanation contained on Exhibit No. 6. The error which we have mentioned was carried into the findings of the court and into the judgment and rendered the same erroneous. The error is explained by defendant Hastorf, as follows: When the personal property was turned over to the sales company, the attorney arranging the matter for the new corporation informed Hastorf-Lord, Inc., that they could not purchase the personal property of the Hastorf-Lord, Inc., from that corporation if there was indebtedness against

the Hastorf-Lord, Inc., and that it would be necessary for Hastorf-Lord, Inc., to sell the personal property to the stockholders, Harder, Lord and Hastorf, and for them to turn it over to the new corporation. Pursuant to that plan H. C. Hastorf credited Hastorf-Lord, Inc., with the amount of the merchandise charged to him, namely $9,157.41 on the amount due him from Hastorf-Lord, Inc., thereby paying for his portion of the assets of Hastorf-Lord, Inc. Harder, the plaintiff, and Lord did not in any way pay for their portion of such assets nor take into consideration the payment made or credit given by defendant Hastorf. It is shown by plaintiff's Exhibit No. 1 that the $9,157.41 was deducted from the amount owing to Hastorf-Lord, Inc. When the sales company disposed of the merchandise that was turned over to it by Hastorf-Lord, Inc., in excess of $22,500, or could use it, they paid back to Hastorf-Lord, Inc., the amount thereof.

Mr. J. M. Harder testified in part that after Mr. Hastorf subscribed for the $30,000 par value of stock in the new corporation, plaintiff and Mr. Hastorf and Mr. Lord had several meetings and tried to "have it so that each one knew where they were standing" in regard to the various amounts due each one; that about June, 1931, when they had a meeting for the purpose of adjustments, plaintiff's Exhibit No. 3 was brought up; that it is in the bookkeeper's, Mrs. McCarty's, writing; and that he requested her to get that out. The bookkeeper, Mrs. McCarty, was not called by the plaintiff. Mr. Harder further testified:

"Q. What did he say about paying for it, if anything? Tell the court what he said about paying for it.

\*      \*      \*      \*      \*

A. No, your Honor, this is what Mr. Hastorf told me: he said if I would give him time, he would pay me

for my interest just as it appears there on the Hastorf-Lord. Inc.''.

He further stated: ''this was sometime after the consolidation of the Plumbing & Heating Sales—I mean after they consolidated. At this time the money wasn't all,—the accounts weren't all straightened out, as I understand it.''

Pursuing the theory of the allegations of plaintiff's complaint, Mr. Lord testified: ''I stated I would take that amount of stock as my interests appeared in Hastorf-Lord after liquidation, which there was no way of knowing until after final liquidation of any particular amount.'' He states, in substance, that he signed an agreement to that effect, to take stock in the new corporation ''as my final interests appeared after liquidation''.

The Hastorf-Lord, Inc., it appears, was to receive some money from the Pittock Block. Mr. Lord states:

''We had to receive the money from the Pittock Block first from the savings derived from a certain heating plant that was put in there, and we knew it might be one year or three years before we got that money, and we agreed whenever that money came in, that the three of us would divide it up as our interests appeared in Hastorf-Lord. * * *''

There is no reason why one part of the assets of the Hastorf-Lord, Inc., should be divided between the parties differently from the other assets.

Mr. Lord states that Harder's agreement was the same, with the exception of the definite amount of $5,000 in stock mentioned for Harder to take. He further stated in regard to Mr. Harder's arrangement:

''After final liquidation of Hastorf-Lord. After final liquidation, meant he would know where he stood in the corporation, and if it was more, he would receive it, and if it was less, he would have to pay it in cash.

Q. Let me see. After it was finally determined what his interests were in Hastorf-Lord, Inc., then that amount would be subtracted from the five thousand?

A. Subtracted or vice-versa, if the case showed.

Q. But you could not find out what that final amount was until final liquidation, or approximately?

A. Approximately that way, until it was liquidated enough, the big accounts, so that we knew really where we stood.

\*       \*       \*       \*       \*

Q. How were you to find out what your interests in the old company were; how would you figure that out?

A. Well, at that particular time there were several fairly large sized accounts that we might take a loss on, which turned out as such, and there would be no way of knowing until the bulk of those accounts were settled to our satisfaction one way or the other, and then we would know within a few dollars of where we set, what the amount was going to be.

\*       \*       \*       \*       \*

Q. That is, you would go and pay up the bills you owed of Hastorf-Lord Company and collect the money you had coming?

A. Yes, sir.

Q. Now then, what you had left on hand would be the assets of Hastorf-Lord, wouldn't it?

A. Yes, plus the amount in this inventory that was turned over to Mr. Hastorf.

\*       \*       \*       \*       \*

Q. And at that time you claim you had before you your Exhibit 3.   \*   \*   \*   And at that time you claim you figured out what each one's interest was in the old company?

A. Yes.''

We think Mr. Lord was correct to the extent that they endeavored to figure out their respective interests in the old Hastorf-Lord, Inc., but on account of the error they did not do so. They did not pursue the correct method and there was error in figuring the

interest of defendant Hastorf in an entirely different manner than the interests of plaintiff and Lord were figured, and in deducting from the amount owing to Hastorf from the Hastorf-Lord Company $9,157.41, making his interest in the old company that much less, when the same method was not pursued in regard to figuring Harder's and Lord's interests. Any other construction of the testimony, we think, would not be responsive to the allegations of the complaint.

We want to disclaim any criticism in regard to the bookkeeper, Mrs. McCarty. Her books were neatly kept and she is entitled to considerable credit. The task of figuring out these involved interests should never have devolved upon her. Neither should the court have been troubled with such accounts. It is a matter for an expert accountant not only to compute the accounts and balance them, but also to determine the interests of each of the partner stockholders, as they are called.

The findings of the circuit court are not supported by the evidence. The judgment is erroneous and is reversed. The cause will be remanded for a new trial.

ROSSMAN, J., not sitting.