Argued April 7, modified May 25, 1920.

## CHANCE v. WESTON.

(190 Pac. 155.)

**Trusts—Oral Agreement to Hold Land Subject to Conveyance When
Directed Held Void.**

1. Where land was conveyed in trust for a woman under an agree-
ment that the trustee should convey to her or as directed by her, and
she orally directed the trustee to convey to her daughters, the power
thereby given the trustee was void under the statute of frauds (Sec-
tions 804, 7398, L. O. L.), as the trust was for her benefit, and no
trust could be created by parol for the benefit of the daughters.

**Trusts—When Testamentary in Character, Could not be Executed
After Death of Donor.**

2. Where a woman for whose benefit land was conveyed in trust,
under an agreement that the trustee should convey to her or as
directed by her, directed the trustee to convey to her daughters, and
the attempted trust in favor of the daughters was testamentary in

character, it could not be executed after her death, and the trustee's conveyance pursuant to such direction after her death was void.

### Estates—"Estate in Fee" Defined.

3. An "estate in fee" is *every estate which is not for life, for years or at will.*

### Curtesy—Exists in Equitable Estate Notwithstanding Statute; "Fee."

4. Section 7315, L. O. L., as amended by Laws of 1917, page 687, giving widowers the right as tenants by the curtesy to the use for life of one half of the lands of their wives, provided that any man entitled to curtesy may elect in lieu thereof to take the undivided third part of his wife's land in his individual right in "fee," does not abolish the right of curtesy in equitable estates as previously existing, as the word "fee" is used as meaning simply an estate of inheritance.

### Curtesy—Depends on Character of Wife's Title.

5. A husband's right to curtesy depends on the character of the estate which the wife had in her lifetime, and not on the estate which her heirs would take by descent or the source of her title.

### Curtesy—Husband not Barred by Conveyance in Trust for Wife.

6. Where husband and wife conveyed land in trust for the wife, and the wife died intestate as to such land, the husband was not barred by such conveyance of his right of curtesy in the land.

### Curtesy—Dower—Contracts Between Husband and Wife are Void.

7. Husband and wife cannot contract with each other regarding any estate growing out of the marriage relation, and conveyances between them intended to cut off or relinquish curtesy or dower are void.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.

Plaintiffs instituted this suit to obtain a decree declaring plaintiff Marion T. Chance entitled to curtesy in certain land described in the complaint, and that subject to such right plaintiff Addie Schmelzer be declared to be the owner in fee of an undivided one-fourth interest in the land as one of the four heirs of Laura I. Chance, deceased, the other heirs being defendants Rachel Weston, Myra Goeres and Georgia Tinnerstett.

Plaintiff Marion T. Chance, appeals from that part of the decree denying his right of curtesy. The defendants filed a cross-appeal from the part of the

decree canceling the deed from the defendant Tillamook County Bank to the above last-named defendants, and declaring plaintiff Addie Schmelzer entitled to a one-fourth interest in the land.

The decree was rendered by the Circuit Court on the pleadings, which show, in substance, the following facts: On March 7, 1918, plaintiff Marion T. Chance and Laura I. Chance, now deceased, were husband and wife, and together conveyed by warranty deed to the defendant Tillamook County Bank, a corporation, the tract of land in suit. On the same date the grantors delivered with the deed the following written instructions to the defendant bank:

"To the Tillamook County Bank:

"The undersigned are this day executing and delivering to you a warranty deed conveying the following described real property, situated in Tillamook County, Oregon, to wit: [Here follows description of real property.]

"This conveyance is being made without any actual consideration, and with the understanding and agreement that the legal title thereto is to be held by you in trust for Laura I. Chance, and that you shall convey the legal title to the said property to the said Laura I. Chance, or as directed by her, at any time when she shall request you so to do; all necessary expenses to be paid by her. Dated this March 7, 1918.

"MARION T. CHANCE,
"LAURA I. CHANCE."

On the same day the Tillamook County Bank in writing acknowledged the receipt of the conveyance, and declared that the legal title was to be held by it in trust, and conveyed in accordance with the provisions of the foregoing declaration.

It is alleged in the answer, in effect, that the conveyance was executed in the settlement of property

rights between the husband and wife in contempla-
tion of divorce proceedings by Laura I. Chance, and
that certain other personal property was transferred
to plaintiff Marion T. Chance. No divorce suit was
ever instituted.

On August 20, 1918, Laura I. Chance died. The
defendant bank still held the legal title to the land
in question in trust for the use and benefit of Laura
I. Chance, the deed therefor having been placed of
record immediately after its delivery. The bank,
however, asserted that Laura I. Chance had given it
oral instructions, about ten days before her death,
to convey the land to three of her daughters, namely,
defendants Rachel Weston, Myra Goeres, and
Georgia Tinnerstett.

On August 30, 1918, the defendant bank conveyed
the land to the above-named three daughters of the
deceased, the deed being duly recorded. Laura I.
Chance, deceased, although making a will, died intes-
tate as to the land which was not mentioned in the
will. Therefore the land descends to the heirs at
law of the deceased. Prior to her death she made
no disposition of the real property by any writing.

On the date of the deed to the bank Mr. and Mrs.
Chance executed an agreement, dividing their per-
sonal property, she giving her interest in certain
personal property on the farm to him, and he giving
his interest in certain personal property thereon to
her. It is recited in the agreement that the farm and
personal property were then leased for a term end-
ing January 1, 1919. It was agreed that the rent of
the real and personal property should be equally
divided between them until the end of the term of the
lease. It was further agreed thereby that the con-

tract and conveyance constituted a full settlement of all property rights between the parties.   MODIFIED.

For appellant, Marion T. Chance, there was a brief with oral arguments by *Messrs. Johnson & Handley.*

For respondents and cross-appellants there was a brief over the names of *Mr. H. T. Botts* and *Mr. Geo. P. Winslow,* with an oral argument by *Mr. Botts.*

BEAN, J.—The trial court concluded that the conveyance from the Tillamook County Bank on August 30, 1918, to defendants Rachel Weston, Myra Goeres, and Georgia Tinnerstett was not effective to invest the title to the real property in the grantees named therein, because the conveyance was not executed and delivered prior to the death of Laura I. Chance, and the authority of the defendant Tillamook County Bank to execute such conveyance to said grantees ceased upon the death of Laura I. Chance; and that said conveyance should be canceled of record.   The appeal of the defendants from this portion of the decree raises the first question for determination.

It is the contention of the defendants that, when the Tillamook County Bank, the trustee, received oral instructions from Laura I. Chance on August 10, 1918, to convey the land to Mrs. Chance's three daughters above named, the bank, as trustee, was bound by the trust agreement to convey the property according to Mrs. Chance's instructions, and the trustee thereafter held the property in trust for the grantees named by Mrs. Chance, and the execution of the trust, even though nonenforceable by the grantees, cannot be questioned.   They cite and rely

upon the case of *Richmond* v. *Bloch,* 36 Or. 590 (60 Pac. 385). That was a case where a husband conveyed land by absolute deed to his wife on the verbal agreement that she should hold it in trust for their children. Her conveyance of the land to the children was upheld as against her creditors.

The death of Laura I. Chance having occurred before the conveyance by the bank to her three daughters, there was nothing at the time of her death upon which this new alleged trust could rest other than the oral instructions of Mrs. Chance. No other power was given to the defendant bank to convey the land. Section 804, L. O. L., provides *inter alia* that no trust or power concerning real property can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law. Section 7398, L. O. L., is as follows:

"Every grant or assignment of any existing trust in lands, goods or things in action, unless the same shall be in writing, subscribed by the party making the same, or by his agent, lawfully authorized shall be void."

1, 2. The power, if any, given to the defendant bank to convey the real estate to the three daughters was given by parol, and was void under the statute of frauds. The deed executed by the bank to three of the defendants after the death of Laura I. Chance was executed without authority. A trust in real estate cannot be created by parol: *De Vol* v. *Citizens' Bank,* 92 Or. 606 (179 Pac. 282, 181 Pac. 985); *Riggs* v. *Adkins,* 95 Or. 414 (187 Pac. 303); *Doran* v.

*Doran,* 99 Cal. 311 (33 Pac. 929); *Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 206); *Annis* v. *Wilson,* 15 Colo. 236 (25 Pac. 304). The trust created by the conveyance to the bank was admittedly for the benefit of Laura I. Chance, deceased, and no trust thereafter could be created by parol for the benefit of the defendants. If any such trust was attempted by Laura I. Chance during her lifetime, the same was testamentary in character, and therefore could not have been executed after her death: *Stone* v. *Ladd,* 40 Or. 606 (67 Pac. 413); *Rose* v. *Oliver,* 32 Or. 447 (52 Pac. 176); *Richardson* v. *Orth,* 40 Or. 252 (66 Pac. 925, 69 Pac. 455). It is stated in 1 Mechem on Agency (2 ed.), section 652, page 462:

"It is therefore the general rule that the authority of an agent, not coupled with an interest, is instantly terminated by the death of the principal, even though it may have been irrevocable in his lifetime; and that any attempted execution of the authority after that event is not binding upon the heirs or representatives of the deceased principal."

That part of the decree annulling the deed from the bank is affirmed.

The next question for consideration is as to the right of curtesy of plaintiff Marion T. Chance in the land. It is contended by counsel in behalf of plaintiff Marion T. Chance that he is entitled, as tenant by the curtesy, to the use during his natural life of one half of the land described in the complaint.

It is contended by counsel for defendants that Marion T. Chance is barred from any right of curtesy by virtue of the deed executed to the bank and the contract of settlement of property rights between him and his wife. Also that under the Statute of 1917, he is not entitled to curtesy in an equitable estate of his deceased wife. Section 7315, L. O. L.,

as amended by Chapter 333, General Laws of Oregon 1917, page 688, reads as follows:

"The widower of every deceased person shall be entitled, as tenant by the curtesy, to the use, during his natural life, of one half of all the lands whereof his wife was seised of an estate of inheritance at any time during the marriage, although such husband and wife may not have had issue born alive, unless he is lawfully barred thereof. (*Provided, however,* that any man entitled to curtesy, may, at his election, take in lieu of such curtesy, the undivided third part in his individual right in fee of the whole of the land whereof the wife was seised of an estate of inheritance at any time during the marriage, unless he is lawfully barred thereof. *And provided, further,* that when a widower shall be entitled to an election under this section, he shall be deemed to have elected to take the undivided third of such lands unless within one year after the death of his wife he shall commence proceedings for the assignment or recovery of his curtesy.) Estates by the curtesy, may be admeasured, assigned and barred in the same manner that dower may be admeasured, signed (assigned) and barred; and, as far as practicable, all other laws of this State applicable to dower shall be applicable in like manner and with like effect, to estates by the curtesy."

The amendment of 1917 added that portion of the section above quoted which is included in parentheses.

It was held by the trial court that under the amendment of 1917, "curtesy, or the interest of the husband in the lands of the wife, should attach only to an estate of inheritance of which the wife was seised at any time during marriage, and that an estate of inheritance as so used would include only fee simple estates." This was because of the provisions that the widower should have an election to

take an undivided one third of such lands in fee, and there could be no fee in an equitable estate.

The main reliance of defendants is upon the opinion in *Jenkins* v. *Hall,* 26 Or. 79 (37 Pac. 62). In that case the husband was about to abandon and desert his wife, and, in consideration of her joining with the plaintiff in conveying other real estate belonging to him, conveyed the land to her by deed which contained the following clause:

"This deed is made by the party of the first part, and accepted by the said party of the second part, in compliance with a mutual contract for the separation and segregation of the lands, properties, and effects of and belonging to the said parties, or either of them, so that the same may be hereafter held in severalty by each, without any claim thereon by the other; and the said party of the first part hereby covenants with the second party, her heirs and assigns, that neither he nor his heirs, executors or administrators shall or will, at any time in the future, make or claim any right, title, or interest of, in, or to the said lands or premises hereby conveyed, or any part thereof."

We find no such covenant in either the deed executed by Marion T. Chance and wife, nor in the contract between them relating to the personal property. As a general rule the husband is tenant by the curtesy of the wife's equitable estates of inheritance as well as her legal estates, if the requisites exist which would entitle him to curtesy in the latter: 17 C. J., p. 424, § 26; 12 Cyc. 1010; 8 R. C. L., p. 396, § 8; *Jackson* v. *Becktold Printing etc. Co.,* 86 Ark. 591 (112 S. W. 161, 20 L. R. A. (N. S.) 454); *Dugan* v. *Gittings,* 3 Gill (Md.), 138 (43 Am. Dec. 306).

Under the curtesy statute in force until 1907, the courts of this state held that in Oregon the right

of curtesy was governed by precisely the same rules as at common law, except the right did not depend upon the birth of a child alive: *Farnum* v. *Loomis,* 2 Or. 29; *Whiteaker* v. *Vanschoiack,* 5 Or. 113; *Runyan* v. *Winstock,* 55 Or. 202 (104 Pac. 417, 105 Pac. 895); *Beam* v. *United States,* 162 Fed. 260 (89 C. C. A. 240); *Parr* v. *United States* (C. C.), 153 Fed. 462. In 1907 (Laws 1907, p. 152) the statute was amended to read as in Section 7315, L. O. L., before the amendment of 1917. In 1919 (Laws 1919, p. 622), the legislature again amended Section 7315 so that the same reads as it did before the amendment of 1917. This last amendment does not affect the present case.

3. An estate in fee is every estate which is not for life, for years, or at will: 3 Words & Phrases, 2706, where we read:

" * * In Modern English tenures a fee signifies an estate of inheritance and a fee simple imports an absolute inheritance, clear of any condition or limitation whatever, and, when not disposed of by will, descends to the heirs generally. There are also limited fees; (1) qualified or base fees; (2) fees conditional at the common law."

Fee simple is defined in Bouvier's Law Dictionary as:

"An estate of inheritance. Cole, Litt. 1 b; 2 Blackstone Comm. 106. * * It is the largest possible estate which a man can have, being an absolute estate in perpetuity. It is where lands are given to a man and to his heirs absolutely, without any end or limitation put to the estate: Plowd. 557; Atkinson, Conv. 183; 2 Sharswood, Blackst. Comm. 106."

The terms "fee" and "fee simple" are often used as convertible terms: 3 Words & Phrases, 2706; 12 Am. & Eng. Ency. of Law (2 ed), 890.

4. In the amendment of 1917, we think the word "fee" taken in connection with the whole section means simply an estate of inheritance. Otherwise it would contradict the former portion of the law declaring a widower entitled to curtesy or one-half part of all the lands whereof his wife was seised of an estate of inheritance.

The amendment of 1917 does not indicate a legislative intent to change the character of the title of estates to which the right of curtesy attaches. Had the legislature intended to change the long-established rule entitling a husband to curtesy out of the wife's equitable estate of inheritance, it would have been very easy to have expressed it thus. We cannot believe that the amendment abolished the right of curtesy to an equitable estate.

5, 6. The next question is, Was the plaintiff, Marion T. Chance, barred by virtue of the conveyance executed to the bank? The right of the husband to curtesy depends on the estate which the wife had in the property in her lifetime and not on the estate which her heirs would take by descent. It is not important whence or by what means the wife acquired her title. The tests to be applied relate to the character of the title and not to its source. Hence the right of curtesy of a husband exists, though the property was acquired by her through a conveyance from him to a third person who subsequently conveyed it to his wife: 8 R. C. L., p. 395, § 7. It is also stated in Section 8 thus: "The authorities are practically agreed that curtesy may exist in lands in which the wife has an equitable estate of inheritance (citing among other authorities, *Ogden* v. *Ogden,* 60 Ark. 70 (28 S. W. 796, 46 Am. St. Rep. 151), wherein the court held that a husband

was entitled to curtesy in lands conveyed by him to his wife, such a conveyance vesting her with an equitable estate only). See, also, 17 C. J., p. 423, § 22. In 8 R. C. L., p. 399, Section 12, we read:

"Wife's Separate Estate.—It is clear that at common law it was not competent in a grant to a woman of an estate of inheritance to exclude her husband from his right of curtesy, and the fact that he was not entitled to receive the rents and profits did not defeat his right; and while a husband is entitled to curtesy in the equitable separate estate of his wife, there is no doubt but that such an estate may be so limited as to give a wife the inheritance and at the same time to exclude and deprive the husband of curtesy by words clearly denoting that intention."

The same principle is stated in 17 C. J., page 424, Section 24; and page 425, Section 27, where it is declared that the right of curtesy is favored in the law, and a husband will not be excluded from rights in property springing from the marital relation except by words that leave no doubt of the intention so to do, nor will he be excluded by words of restraint, limitation, proviso, or condition; and it has been held broadly in England that the husband cannot be excluded from curtesy in the wife's separate estate.

The great weight of authority is that where a husband conveys property to his wife in such manner that it becomes a part of her separate estate he is entitled to curtesy therein unless an intent to the contrary clearly appears: 8 R. C. L., p. 399, § 11.

7. In Oregon neither husband nor wife can contract with the other regarding any estate growing out of the marriage relation, and conveyances between married persons intended to cut off or relinquish such estates as curtesy or dower are entirely

void: *Jenkins* v. *Hall*, 26 Or. 79 (37 Pac. 62); *House* v. *Fowle*, 20 Or. 163 (25 Pac. 376).

A contract between a wife and her husband for the elimination by him of his curtesy estate in her property, the right to which is given by Section 7315 and by Section 7318, as amended by Chapter 331, Laws of 1917, which provides that: "A married woman may, by will, dispose of any real estate held in her own right, subject to any rights which her husband may have as tenant by the curtesy or his election thereunder," is held to be entirely void both at law and in equity as being against the public policy of the state of Oregon: *McCrary* v. *Biggers*, 46 Or. 465 (81 Pac. 356, 114 Am. St. Rep. 882); *Potter* v. *Potter*, 43 Or. 149 (72 Pac. 702).

Plaintiff Marion T. Chance, as the widower of Laura I. Chance, deceased, is entitled as tenant by the curtesy to the use during his natural life of one half of the land described in the complaint. The decree of the lower court is modified accordingly. Neither party will recover costs or disbursements herein. MODIFIED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.