Charles S. Moses, complainant-appellant,

*v.*

Mabel Oliver Moses, defendant-respondent.

[Submitted February 14th, 1947.   Decided June 27th, 1947.]

*Mr. Bruce A. Wallace* (*Mr. Rocco Palese,* of counsel), for the appellant.

*Messrs. Powell & Parker* (*Mr. Harold T. Parker,* of counsel), for the respondent.

The opinion of the court was delivered by

HEHER, J.

The original transaction here falls into the category of an oral express or direct trust. The presumption of a voluntary settlement arising from the appellant husband's conveyance of the six parcels of land to his wife on May 6th, 1941, by deed absolute on its face, was overcome by the proofs. It was shown by clear and convincing evidence (the standard of proof in such cases) that the conveyance was made to the use of the husband. Indeed, there is no contention *contra;* it is conceded that the transfer was not motivated by a donative intent and purpose. The husband was then a general contractor engaged in construction work on a large scale, and in immediate need of working capital; and the evidence demonstrates that the sole design of the conveyance was the enlargement of his bank credit and borrowing capacity through the establishment of a separate credit for his wife. To the same end, there was a contemporaneous transfer of another piece of real estate by his wife to him. Four of the parcels in question were improved, and tenanted; the remaining two were unimproved. The insistence is that on April 16th, 1943, when their relations were in crisis after a period of estrangement, there was an effective voluntary parol settlement of the six parcels of land by the husband upon the wife, as the Vice-Chancellor found.

Parol trusts in land are valid and enforceable at common law. But the Statute of Frauds provides otherwise. Section 3 renders utterly void "All declarations and creations of trust or confidence" concerning lands, unless "manifested and proved by some writing, signed by the party who is or shall be by law enabled to declare such trust, or by his last will in writing," save "any conveyance * * *, by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law." *R. S.* 25:1–3. The inquiry, therefore,

is whether in the foregoing circumstances a trust, enforceable in equity, arose or resulted by implication or construction of law.

There was not a resulting trust in the true concept of the term. A trust of this class arises where property is transferred under circumstances which give rise to an inference that the person who makes the transfer or causes it to be made does not intend the transferee to take the beneficial interest in the property; and there are properly but three divisions of the class: (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust *res;* and (3) where the purchase price of the property is paid by one person and at his direction the vendor conveys the property to another person. In each of these instances the inference arises from the character of the transaction that it is not intended that the person taking title to the property is to have the beneficial interest. In (1) and (2) an express trust is created, but there is no disposition in terms of the trust *res* if the trust fails or a surplus remains after performance of the trust; and the inference is, not that the settlor actually intended that the trust *res* or surplus should be returned to him, for there is no indication that the possibility of failure of the express trust or the existence of a surplus was in contemplation, but that there was no intention in any event that the trustee should have a beneficial interest. In short, in the absence of a disposition of the *res* in the events indicated, equity compels the return of the property to the settlor. In (3), although it would seem that a purchase of property by one person in the name of another suggests an express trust arising out of the intention of the purchaser, equity has long considered the transaction as giving rise to a resulting trust, wholly apart from the intention, since the character of the transaction raises an inference that the purchaser did not intend that the grantee should have the beneficial interest in the *res,* and therefore the Statute of Frauds does not serve to deprive the purchaser of the right to compel the grantee to convey the property to him. The circumstances of the transaction render unnecessary proof of an undertaking by the grantee to hold the prop-

erty in trust for the purchaser, and so dispense with the requirement of the Statute of Frauds that there be a written memorandum of the creation of an express trust in land. The principle of resulting trusts has its genesis in the early doctrine of the English Chancery that where the inference was that the transferee of the land was not intended to take the use or beneficial interest, and there was no declaration as to who was to take it, the use sprang back or resulted to the person who made the conveyance or caused it to be made, and so was a resulting use as distinguished from an express use. There is an express trust if an affirmative intention to create it appears; in the case of a resulting trust the circumstances indicate the absence of an intention to vest the beneficial interest in the person to whom the legal title is transferred. *Scott on Trusts,* §§ *404, 404.1.*

But, while an express trust wanting a written manifestation is not enforceable, equity may in certain cases afford relief by the restoration of the *status quo ante* through the formula of a constructive trust. A resulting use or trust is closely of kin to an express use or trust, but differs radically from a constructive trust. A constructive trust is not grounded in the intention of the parties, inferred or presumed; it is a remedial device of equity—a trust *in invitum*—to prevent unjust enrichment. In England, where A has by deed absolute on its face made a voluntary conveyance of land to B, upon B's oral undertaking to hold the land to the use of A and to reconvey to him upon demand without consideration, the *cestui* cannot enforce the trust if B sets up the Statute of Frauds, but in that event B is under a duty to return the property received on the faith of the oral promise, and equity will compel performance of the duty through the medium of the constructive trust. *Taylor* v. *Taylor, 1 Atk. 447; Booth* v. *Turle, L. R. 16 Eq. 182; In re Duke of Marlborough (1894), 2 Ch. 133; Davies* v. *Otty, 35 Beav. 208; Haigh* v. *Kaye, L. R. 7 Ch. App. 469.* The prevailing view in this country is to the contrary. By the great weight of authority, the transferee of land upon an oral trust is allowed to retain the land, save (a) where the transfer is procured by fraud, duress, undue influence or mistake; (b) where the

land is conveyed to a person who is at the time in a confidential relation to the transferor for whom he has orally agreed to hold it; (c) where the transfer is effected by deed absolute in terms, but intended as a mere security; (d) where the transfer was made in contemplation of death; and, perhaps, other cases which need not be mentioned here. The English rule has not been given its full sweep here on the supposed ground that it violates the policy of the Statute of Frauds, if not the letter, and the ban of the statute extends also to the restoration of the *status quo*. *Scott on Trusts*, §§ *44, 481.3, 485 et seq.; Bogert on Trusts and Trustees*, §§ *495 et seq.; Restatement of the Law of Trusts, A. L. I.,* § *44.* The English Statute of Frauds of 1677 (*29 Car. II, c. 3*) is the prototype of ours.

We have not overlooked the reasoning of the Chancery case of *Lovett* v. *Taylor, 54 N. J. Eq. 311;* but we do not entertain the view that the use of the constructive trust to prevent unjust enrichment in the instances mentioned would contravene the policy of the Statute of Frauds. There is an obvious distinction of substance between the enforcement of an oral trust and the acceptance of proof of an oral trust for the mere restoration of the *status quo,* and thus to prevent the unjust enrichment of the trustee. It is familiar practice in equity to compel a person unjustly enriched by the acquisition or retention of property to surrender it in specie to the person at whose expense he is. so enriched; and so there is a certain analogy between this equitable remedy and an equitable proceeding to enforce an express trust. But the constructive trust is essentially a remedial concept. The two are quite different juridical institutions. While the constructive trust sometimes affords a remedy for the redress of a breach of an express trust, it is available also in varied situations having no relation to express trusts. In general, a constructive trust arises where a person holding title to property is under an equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it. There may be a constructive trust where the retention of the property would unjustly enrich the person retaining it, even though its acquisition was not wrongful. The enforcement

of such a trust consists merely in the restoration of the *status quo*. *Scott on Trusts,* §§ *461, 462, 462.1, 462.2.* Judge Cardozo stated the principle thus: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty* v. *Guggenheim Exploration Co., 225 N. Y. 380; 122 N. E. Rep. 378.*

The fraud giving rise to a constructive trust may be either actual or constructive; it suffices in this regard if the retention of the property would constitute an unconscionable advantage by the holder of the legal title over the grantor. And this is the case where, by reason of kinship, the grantor reposes a high degree of trust and confidence in the grantee, and the grantee abuses the confidential relationship by retaining the property as his own in violation of his oral promise to hold it in trust for the grantor. Equity relieves against a breach or abuse of such confidence. It is not requisite that there be a technical fiduciary relationship. Where the confidence was induced by close kinship, its abuse will support a constructive trust. Equity affords a remedy where unjust enrichment ensues from an abuse of the confidence thus reposed. *Sinclair* v. *Purdy, 235 N. Y. 245; 139 N. E. Rep. 255; Forman* v. *Forman, 251 N. Y. 237; 167 N. E. Rep. 428; Housewright* v. *Steinke, 326 Ill. 398; 158 N. E. Rep. 138; Brison* v. *Brison, 75 Cal. 525; Silver* v. *Howard, 106 Kan. 762; 190 Pac. Rep. 1.*

The doctrine of equitable relief is grounded in the requirement of conscience and good faith in one's relations with another, measured by the common standard of civil right and justice. Whenever a legal estate is vested in A, but under circumstances which according to settled equitable doctrine entitle B to the land, or some interest therein, equity secures B's rights, not by annulling or ignoring A's legal estate, but by charging A's conscience with a trusteeship for B's benefit and the duty of consummating B's equitable ownership by a conveyance. *Pom. Eq. Jur. (5th ed.), §§ 56, 57, 58, 398, 430, 431.* Equity will not suffer the use of the Statute of

Frauds as an instrument of fraud. *Wirtz v. Guthrie, 81 N. J. Eq. 271; McCormick v. Grogan, L. R. 4, H. L. 82, 97.* It operates upon the conscience of the party to prevent undue and unconscientious advantage. The statute affords protection to those whose consciences are not affected. Compare *Greaves v. Tofield, L. R. 14 Ch. Div. 563.*

Thus it is that the transaction here constituted an oral unenforceable express trust, but one to which the constructive trust formula is applicable as a remedial device for the restoration of the *status quo,* and thereby to prevent an unjust and unconscionable advantage that would otherwise accrue to the holder of the legal title through an abuse of the confidential relationship between the parties. In fine, while the Statute of Frauds precludes the enforcement of the exprss trust, the oral agreement may be shown, not for the purpose of enforcing it, but simply to restore the parties to the situation which obtained before the voluntary conveyance was made.

It remains to consider whether the *cestui's* beneficial interest may be extinguished by a parol grant or surrender to the trustee.

The beneficial interest arising out of an express trust which satisfies the demands of the Statute of Frauds is not subject to grant or assignment by parol. *R. S. 25:1–4.* And it is now the generally accepted view in this country that where an express trust, whether by deed or will, fails or is fully performed without exhausting the trust estate, the resulting trust in favor of the settlor cannot be extinguished or destroyed by parol, but that the beneficial interest under a purchase-money resulting trust may be extinguished by a parol grant or surrender to the grantee trustee. This latter doctrine proceeds upon the theory that an equitable interest in land which rests on parol proof may be discharged by parol. The view *contra,* which is not without reason, is that where the extinguishment of the trust is derived from the common intention of the parties, under the Statute of Frauds the intention is effective only if evidenced by a written instrument. *Scott on Trusts,* § *460; Bogert on Trusts and Trustees,* § *466; Restatement of the Law of Trusts,* §§ *429, 439, 460.* It was the early view in this state that a resulting trust, being

founded on parol, may be rebutted, put down or discharged by parol. *Peer* v. *Peer, 11 N. J. Eq. 432; Warren* v. *Tynan, 54 N. J. Eq. 407.* But the holding is to the contrary in the comparatively recent case of *Seddon* v. *Pickard, 101 N. J. Eq. 241.*

Section 2 of the Statute of Frauds requires a writing for the assignment, grant or surrender of an estate or interest in lands. *R. S. 25:1–2.* And section 3 excludes from its operation a transfer or discharge of a trust or confidence "by act or operation of law." *R. S. 25:1–3.* It would seem that the express exclusion of grants or assignments by operation of law signifies the inclusion of grants or assignments by the conventional act of the parties in the category of cases requiring a writing, the more so because of the cited provision of section 2 of the statute. An affirmative expression ordinarily implies a negation of any other. *Expressio unius est exclusio alterius.*

But however this may be, though a constructive trust in lands may be terminated by parol in certain circumstances, there cannot be an oral extinguishment or surrender of the beneficial interest to the trustee where the trust grows out of the abuse of a confidential relationship such as existed here. *Hatcher* v. *Hatcher, 264 Pa. 105; 107 Atl. Rep. 660; Scott on Trusts, § 481.3.* See, also, the informative treatise of Professor Scott in *42 Harvard Law Review 849.* In such event, the doctrine of an election between remedies for a cause of action is not involved. The circumstances determine the character of the particular constructive trust. While in a case such as this the formula of a constructive trust is employed to prevent the unjust enrichment of the grantee trustee at the expense of the grantor, the *res* is nevertheless an equitable estate or interest in the lands rather than a chose in action. It is an estate raised by equity and cognizable in equity only, but an estate or interest in land nonetheless. To serve essential justice, equity fastens a trust upon the conscience of the holder of the legal title, and converts him into a dry trustee for the one who in equity is vested with the beneficial enjoyment; and this equitable estate has in the main the characteristics and incidents of the beneficial inter-

est created by an express trust. And equitable estates and interests in land are within the operation of the Statute of Frauds. Respondent's contention that the statute "applies to the legal title" only is not well founded. *Vide Partridge* v. *Cummings, 99 N. J. Eq. 14; 49 Am. Jur. 493; 37 C. J. S. 587.* There is no sufficient reason why a writing should not be the medium of transfer of an equitable estate or interest such as this. The primary design of the cited provisions of the Statute of Frauds is to avoid the hazards attending the use of uncertain, unreliable and perjured oral testimony, and thus to make for stability in the titles to real estate; and equitable estates are equally exposed, if not more so, to the mischief which the statute was designed to remedy. The reason of a law affords the key to its meaning.

It is not a determinative circumstance that the holder of the equitable beneficial estate surrendered to the trustee possession of the lands and the rents and profits thereof, pursuant to the oral gift. Possession alone is not enough. To work an estoppel, it must also be shown that, on the faith of the parol grant or surrender, the grantee made "valuable improvements" upon the land "of a permanent nature." *Roberts-Horsfeld* v. *Gedicks, 94 N. J. Eq. 82;* affirmed, *96 N. J. Eq. 384.* If the oral grant or surrender of the equitable estate induces the expenditure of labor or money in the improvement of the land, it is cognizable and enforceable in equity, for the contrary course would work a fraud. Such a case is analogous in equity to a parol promise to sell land where possession is surrendered and the vendee performs on his part. *Freeman* v. *Freeman, 43 N. Y. 34; Neale* v. *Neale, 9 Wall. 1; 19 L. Ed. 590; Bevington* v. *Bevington, 133 Iowa 351; 110 N. W. Rep. 840; 9 L. R. A. (N. S.) 34.* The improvements must be valuable and permanent—not such as would ordinarily be made by a mere tenant to enjoy the estate. We have no occasion to consider whether there are other conceivable circumstances which in equity would estop the grantor of the oral equitable interest from invoking the Statute of Frauds. It suffices to say that the elements of an estoppel *in pais* are utterly lacking here; indeed, there is no claim of estoppel.

Thus, the *cestui's* pleaded parol surrender of the beneficial estate in the lands to the trustee was wholly ineffectual, and so there was error in the dismissal of the bill of complaint.

We concur in the Vice-Chancellor's finding that the husband is indebted to his wife upon the promissory note made the subject of the counter-claim. The moneys lent were clearly the wife's separate property.

The decree is accordingly reversed as to the dismissal of the bill of complaint, and affirmed as to the counter-claim, all without costs; and the cause is remanded for further proceedings in conformity with this opinion.

*For modification*—The Chief-Justice, Bodine, Donges, Heher, Colie, Wachenfeld, Wells, Dill, Freund, McGeehan, McLean, JJ. 11.