Argued October 26, 1964, reversed and remanded May 19, 1965

IN THE MATTER OF THE ESTATE OF
HENRY BUESING, DECEASED
BELTON v. BUESING
402 P. 2d 98

*Oliver I. Norville,* Special Assistant Attorney General, Portland, argued the cause for appellant. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Thomas Gooding,* La Grande, argued the cause for respondent. On the brief were Burleigh, Carey & Gooding, La Grande.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

O'CONNELL, J.

This is an appeal by the State Treasurer from an order of the Union County Circuit Court overruling his objections to the determination of the inheritance tax in the estate of Henry Buesing, deceased. The objections were made on the ground that certain property in which decedent had an interest had been excluded from the net taxable estate in determining the inheritance.

Henry, Charles, and Benjamin Buesing, who were brothers, formed a partnership in 1903 for the purpose of operating a farming and cattle business. From 1915 to 1931 the brothers acquired four parcels of land. Two of the deeds designated the brothers as tenants in common; two deeds designated the grantees as partners.

In 1940 Henry disclosed to Charles his intent to marry. On May 3, 1940, at Charles' insistence, Henry conveyed all of his interest in the property which the brothers had previously acquired and which had been used for partnership purposes. The purpose of the conveyance was to prevent Henry's prospective wife

from getting an interest in the property.① No consideration was paid for the conveyance. A gift tax return was not filed. Henry was married on December 4, 1941. The marriage was annulled on June 29, 1942. After the annulment the property was not conveyed back to Henry. When asked why the property was not reconveyed, Charles testified, "Oh, I don't know just why." He added, "Never was anything said about it and I just forgot about it and that land."②

---

① Charles Buesing testified as follows:

"Q * * * You said the reason that he transferred this to you, he didn't want another party to get any interest?
"A Yes.
"Q Is that true?
"A Yes, that's right.
"Q Up until this date none of the three of you brothers had been married, is that true?
"A Yes."
"* * * * *

"Q Well, you say that the reason for the transfer was that Henry didn't want another party to get an interest in it. Now didn't Henry get married about that time?
"A Shortly after, I guess, yes.
"Q Wasn't that woman the person you're talking about—
"A Yes.
"Q —that Henry didn't want to have an interest in the property? Isn't that right?
"A Well, I guess—I made him do that.
"Q You made him do that?
"A Yes, or asked him to.
"Q So this woman couldn't get any interest in the property, isn't that true?
"A That's right."

② The testimony went as follows:

"Q But you never did reconvey the title back to Henry?
"A Never have.
"Q Why not, while he was alive, say, after the annulment of the marriage?
"A Oh, I don't know just why.
"Q You don't know?
"A (Shaking head in the negative) Never was anything said about it and I just forgot about it and that land."

In 1955 the three brothers joined in the sale of three parcels of property referred to as the Schroeder, Taylor Bros. and Anson sales. The property was sold under executory land sale contracts. The down payment and subsequent payments on the contracts went into the partnership bank account. Later in 1955 Benjamin died. The payments continued to be deposited in the partnership bank account and Henry and Charles regarded the account as owned equally by them. Charles and Henry reported the capital gain and the income derived from these contracts on an equal basis. Henry died in 1962 leaving all of his interest in the partnership and the property to Charles.

The taxpayer contends that since Henry conveyed all of his property to Charles in 1940 the only interest he had at his death was the one-sixth interest he received upon Benjamin's death (Benjamin having left one-half of his one-third interest to each of his brothers after Henry's conveyance to Charles). The State Treasurer contends that Henry owned a one-half interest in the partnership and its assets at his death, and that this interest was taxable when it was devised to Charles.

The trial court held that the deed from Henry to Charles conveyed all of Henry's interest, both legal and equitable, in the property then owned by him and, therefore, the only taxable interest was the one-sixth interest which Henry had received upon the death of Benjamin.

■■ Ordinarily a deed absolute in form with or without consideration creates in the grantee the entire interest in the land, both legal and equitable. In the early English law, since it was common for the grantee to hold land for the benefit of the grantor, it was pre-

sumed that a gratuitous conveyance was not intended to vest the beneficial ownership in the grantee and, consequently, he held the legal title upon a resulting use for the grantor. In modern law, since it is common to make gratuitous conveyances with the intent to vest complete ownership in the grantee, it is held that such conveyances without more do not give rise to a resulting trust for the grantor.[8]

However, a trust may arise out of a gratuitous conveyance absolute in form upon other grounds. Thus a constructive trust may be imposed upon the grantee as a remedial device to avoid unjust enrichment. And an express trust may be created if the grantor manifests an intention to create it.

The intention to create an express trust may be inferred from circumstances attending the conveyance. A resulting trust is also deemed to arise from circumstances attending the conveyance.[9] The difference appears to be that in the case of an express trust

---

[8] 4 Scott, Trusts § 405 (2d ed 1956); Bogert, Trusts and Trustees § 453 (2d ed 1964).

[9] It is generally stated that the creation of a resulting trust is limited to one of the following circumstances: (a) The failure of an express trust; (b) the full performance of an express trust without exhausting the trust estate; and (c) the payment of the purchase price of property by one who directs that title be taken in the name of another. 4 Scott, Trusts § 404.1 (2d ed 1956). We would not confine the resulting trust to these three categories. Rather, we would find a resulting trust wherever the circumstances surrounding the disposition of property raise an inference, not rebutted, that the transferor does not intend that the person taking or holding the property, or a third person, should have the beneficial interest therein. This view finds support in the Oregon cases. Toney v. Toney, 84 Or 310, 165 P 221 (1917) and Gray v. Beard, 66 Or 59, 68, 133 P 791 (1913), holding that "a resulting trust may arise where a conveyance is made without any consideration, and it appears from the circumstances that the grantee was not intended to take beneficially * * *." See also Note: Constructive Trusts in Real Property, 11 Or L Rev 393, 395 (1932).

the circumstances give rise to an inference that the grantor had an affirmative intention to create a trust, whereas in the case of a resulting trust the circumstances give rise to an inference that grantor had no intention to give the beneficial interest to the transferee.[5] Whether this expresses a valid or useful conceptual distinction we need not consider.[6] It is enough to note that a trust of either category may arise out of conduct alone, that is, where there is no expression of intent and the inferences leading to the conclusion that a trust was or would have been in-

---

[5] 4 Scott, Trusts § 404.1 (2d ed 1956).

[6] Scott does not explain how conduct giving rise to an express trust can be any more indicative of an affirmative intent to create a trust than conduct which commonly gives rise to a resulting trust. In each case, the conduct must demonstrate an absence of intent to give the beneficial interest to the transferee. We believe that if the circumstances are sufficient to create a judicial inference that a transferee or third person was not intended to take the beneficial interest, there are necessarily sufficient circumstances to create a judicial inference that the transferor intended the property to be held for his benefit. Precisely the same process of inference drawing is used in concluding from evidence of certain conduct that the transferor affirmatively intended to create a trust for himself. Consequently, we reject the distinction adopted by Scott which ascribes to only certain types of conduct a manifestation of the affirmative intent to create a trust.

"A distinguished writer in this field has suggested that a more logical classification of trusts would be to group them as either 'intent enforcing' or 'fraud rectifying.' Within the former class would fall: (1) Cases where the settlor has by words clearly expressed an intent to have a trust exist; (2) cases in which the settlor has expressed in words an ambiguous intent, which the court examines and finds to be a trust intent; and (3) cases in which the settlor has expressed no intent by words, but in which he has done acts other than talking or writing from which the court finds an intent that a trust arise. In this latter class would fall what are usually called resulting trusts. * * *". Bogert, Trusts and Trustees § 451 at p. 499 (2d ed 1964), citing Costigan, The Classification of Trusts as Express, Resulting, and Constructive, 27 Harv L Rev 437 (1914).

tended by the grantor if he had thought about it, are drawn entirely from circumstantial evidence.

■ In the present case the conveyance was made for the purpose of preventing Henry's prospective wife from obtaining an interest in his property. It seems reasonable to infer from this circumstance that the conveyance was not made to vest the beneficial interest in Charles but simply to set up in him a facade of complete ownership which was to hide the continued beneficial ownership previously enjoyed by Henry. The conveyance could have been made for the double purpose of defeating a marital interest and of making a gift to Charles. But there were no circumstances from which it could be inferred that Henry intended to make a gift to Charles. Quite to the contrary, the evidence indicates that the transfer to Charles was made to serve partnership purposes. Charles testified that it was he who requested the transfer. In fact, he stated "I made him do that," i.e., execute the deed. This clearly is not the setting for a gift—it is the obvious maneuver of the partners erroneously assuming that it was necessary to rearrange the appearance of ownership in the interest of continuing the partnership affairs unembarrassed by claims of an outsider to property used in the partnership business.

Although it was not shown that Charles expressly promised to hold Henry's interest in trust, the obligation could be inferred from the circumstances. Justice Cardozo's language in *Sinclair v. Purdy,* 235 NY 245, 139 NE 255, 258-59 (1923) is appropriate. In that case the grantor, to escape the importunities of friends asking him to go bail for them, executed a deed absolute in form to his sister. There was no proof that the sister agreed to hold in trust for the grantor. The court said, "Though a promise in words was lacking,

the whole transaction, it might be found, was 'instinct with obligation' imperfectly expressed [citing *Wood v. Duff Gordon*, 222 NY 88, 91]." Although this language was used in developing the idea that a constructive trust was created (on the assumption that the Statute of Frauds had not been complied with), it is equally pertinent in a case such as the present to show how a promise may be inferred from circumstances so as to create an enforceable intent-formed oral trust.

▇▇▇▇ Although the grantor's intent at the time of making the conveyance determines the nature of the interest created, it is permissible to look at the conduct of the parties after the conveyance in ascertaining that intent.[7] Their conduct may be regarded as a "practical construction" of the deed.[8] It was shown that after Henry's conveyance the three brothers sold a part of the property used by the partnership and that the down payment and subsequent installment payments were deposited to the partnership account.[9] This conduct would indicate that the partners regarded Henry as having a beneficial interest in the property he had previously conveyed to Charles. In other respects the property was treated as partnership property in pre-

---

[7] "Further subsequent events may be shown by way of explanation." Marston v. Myers, 217 Or 498, 512, 342 P2d 1111 (1959). See also Sinclair v. Purdy, 235 NY 245, 139 NE 255 (1923). It should be observed, however, that insofar as Marston v. Myers, *supra*, holds that no resulting trust arises on the facts presented there, it is inconsistent with the view taken here.

[8] 4 Tiffany, Real Property § 983 (3d ed 1939). Cf., Kincaid v. Peterson et al, 135 Or 619, 628, 297 P 833 (1931); 1 Patton, Titles § 159 (2d ed 1957) (practical location of boundaries).

[9] When Henry died his executor listed in the inventory and appraisement the balance due on the contracts as a partnership asset and Henry is shown as having a one-half interest in such assets. The federal estate tax return filed by the executor included Henry's interest in the balances due on the three contracts.

cisely the same way as it was treated prior to the transfer by Henry to Charles.[10]

The circumstances in this case give rise to an inference that Henry Buesing had no intention to give to Charles a beneficial interest in the property conveyed, and that it was the intention of the parties that the property conveyed should be held and used as partnership property in the same manner as it was held and used before the conveyance. It is immaterial whether this conclusion is explained upon the ground that the transfer to Charles gave rise to an express trust (inferred from conduct) or a resulting trust.

The facts of the present case do not give rise to a constructive trust inasmuch as a constructive trust arises only if the transaction does not create an enforceable express or a resulting trust.[11] A constructive trust is simply a remedial institution invented by equity to avoid unjust enrichment in situations where there is no other available equitable remedy. If, for example, personal property is transferred to the transferee upon an express promise to reconvey to the

---

[10] Although two of the parcels had been acquired by the three brothers as tenants in common, the fact that before and after Henry's conveyance to Charles those parcels were dealt with the same as property admittedly held as partnership property is sufficient basis for holding that the land was held by the brothers as tenants in partnership.

[11] "Constructive trusts are not easy to define. They comprise all trusts recognized and enforced by chancery that are neither express trusts nor resulting trusts. Express trusts and resulting trusts are trusts by the real or the presumed intention of the parties, but constructive trusts are trusts *in invitum*. A constructive trustee may, indeed, have started out as an express or resulting intention trustee, and then have repudiated the trust in reliance on the Statute of Frauds or * * *; but in such case it was not until he repudiated the express trust that he did or could become a constructive trustee." Costigan, The Classification of Trusts as Express, Resulting, and Constructive, 27 Harv L Rev 437, 448-49 (1914).

transferor and the transferee refuses to reconvey in accordance with the agreement a constructive trust does not arise, because all of the elements necessary to the existence of an express trust are present. The same would be true in the case of an oral trust of land unless the defense of the Statute of Frauds were interposed.[28] There is nothing in the record of the present case to show that the Statute of Frauds was interposed as a defense or in any way relied upon in contesting the state's claim to an inheritance tax.[29]

The Statute of Frauds being no obstacle we have, then, a perfectly good oral trust of land which is enforceable in equity, if an express or implied agreement to reconvey can here be found. As previously explained, there being an enforceable express or implied trust, there could be no constructive trust.

It has been suggested that if the transferee is in a confidential relation with the transferor and he refuses to reconvey as promised, a constructive trust arises. If this analysis is accepted, then every trust sought to be enforced against a trustee who refuses to perform would be a constructive trust.

Moreover, although it is not necessary to this thesis,

---

[28] The State Treasurer relies upon the Restatement, Trusts § 44 (1) (b) among other authorities for the conclusion that a constructive trust arises in the present case. It will be noted, however, that the section relied upon states as one of the necessary elements of a constructive trust under the recited circumstances that "no memorandum properly evidencing the intention to create a trust is signed as required by the Statute of Frauds." Because a defense based upon the Statute of Frauds can be waived, the absence of a memorandum has no significance of its own; rather, it becomes significant only upon the transferee's repudiation in reliance upon the Statute.

[29] In Sinclair v. Purdy, 235 NY 245, 139 NE 255 (1923), a leading case in the area of constructive trusts, the court held that a constructive trust arose only after making the assumption that an express trust could not be found for lack of a memorandum sufficient to satisfy the Statute of Frauds.

there is no evidence in this case that the transferee refused to reconvey to the transferor. Charles testified that he did not reconvey because "never was anything said about it and I just forgot about it and the land." The evidence discloses no circumstances either before or after the annulment of Henry's marriage to indicate that Charles refused or would have refused upon demand to reconvey to Henry the interest conveyed. It seems clear that after the annulment of Henry's marriage Charles would have reconveyed upon demand. We shall never know whether there would have been threatened unjust enrichment and the need for equitable relief of any kind.

The taxpayer contends that the State Treasurer is estopped to assert that the conveyance in question did not vest complete ownership in Charles on the ground that the State Tax Commission had so treated the conveyance in assessing the income tax.[9]

■■■■ We accept the view that under appropriate circumstances the state of Oregon may be estopped to assert a claim inconsistent with a previous position taken by it. But we do not think that the circumstances in the present case justify the imposition of an estoppel upon the state. The inheritance tax and the state income tax are administered by separate agencies of government. The two systems of taxation rest upon separate theories giving rise to different problems in the administration of the respective taxes. The State Tax Commission, in order to inhibit tax evasion, may

_____

[9] As a result of a 1960 audit of the state income tax returns of the members of the partnership the returns back to 1956 were amended to tax the partners on the income from the contracts of sale (referred to above) in accordance with the record title to the property. That was done pursuant to an income tax regulation of the State Tax Commission fixing the incidence of the tax in accordance with record title irrespective of the beneficial ownership of the property.

find it advisable to treat a transfer of title as presumptively creating a beneficial interest in the transferee. For the same reason, the State Treasurer may deem it necessary in the administration of the inheritance tax to regard the same transfer as presumptively leaving in the transferor an economic interest. The presumption applied by one agency does not necessarily foreclose the future application of an opposing presumption by the other. The State Tax Commission's auditor, in treating Charles as the owner of the property for the purpose of charging him with a capital gain upon its sale, relied upon an abstract of the Commission's legal department. The abstract pronounced, in effect, that when the legal title to property is held by a partner in his individual name and not as a partner and thereafter the property is sold, the capital gain must be reported by the title holder and cannot be split among the partners.[⑨] We do not understand the abstract to say that the partners are precluded from splitting the capital gain if it is shown that the title is held for the benefit of the partnership or one or more of the other partners individually. If Charles had brought to the auditor's attention the purpose of Henry's conveyance to Charles as revealed by the record in this case, it is quite probable that the capital gain in question would have been allocated among the partners. The taxpayer has not shown any previous action on the part of the state making inequitable the imposition of the inheritance tax upon the basis used by the State Treasurer.

The judgment is reversed and the cause is remanded with directions to enter an order sustaining the State Treasurer's objections to the determination

---

[⑨] Oregon State Tax Commission LDA (CE 58), 0858135, § 6.200, p. 2 (Nov. 21, 1956).

of the inheritance tax in the estate of Henry Buesing, deceased.

LUSK, J., specially concurring.

So far as the opinion of the court holds that there was an enforceable oral express trust it rests upon a ground not taken by the plaintiff State Treasurer and not suggested in the record, briefs or oral argument. The position of the court, as I understand it, is that such an oral trust will be enforced where the alleged trustee does not repudiate it in reliance upon the statute of frauds, and, as the defendant has not invoked the statute, there is no occasion to look further, either for a resulting trust or a constructive trust.

While it is held by most courts that the defense of the statute of frauds is personal and is deemed waived unless pleaded or raised in some other appropriate manner by the defendant, 49 Am Jur 908, Statute of Frauds § 601, there is indication in our decisions that this is not the rule in Oregon with respect to the creation of a trust. See *Presbytery of Willamette v. Hammer*, 235 Or 564, 567, 385 P2d 1013; *Chance v. Weston*, 96 Or 390, 395, 190 P 155; *Chance v. Graham*, 76 Or 199, 213, 148 P 63.

But as I view it that question is not before us. There are no formal pleadings in this case and none were required as it is a proceeding in probate: ORS 115.010. The issue was made by the State Treasurer's Objections to the probate court's Determination of Inheritance Tax—objections based on the ground that the property now involved was not included in the inventory of the estate for the purpose of that determination. There is nothing in the transcript of testimony to indicate on what theory the plaintiff was proceeding, though a lawyer might probably have

sensed that some kind of a trust was claimed. The precise ground for recovery of the tax is disclosed, however, by the plaintiff's brief in this court. He contends that the conveyance of Henry Buesing's interest in the land to his brother gave rise to either a resulting or a constructive trust. Both arise by operation of law and neither is within the statute of frauds: ORS 93.020.[①] I think the evidence establishes a constructive trust and that the defendant's omission to invoke the statute of frauds is in the circumstances of this case immaterial. The oral agreement—or, more accurately in this case, the implied agreement—could be shown "not for the purpose of enforcing it, but simply to restore the parties to the situation which obtained before the voluntary conveyance was made:" *Moses v. Moses,* 140 NJ Eq 575, 583, 53 A2d 805, 173 ALR 273. As stated by Professor Ames: "His bill is not for specific performance of the express trust, but for restitution of the *status quo.*" Ames, Constructive Trusts Based Upon the Breach of an Express Oral Trust of Land, 20 Harv L Rev 549, 551. See, also, 1 Scott, Trusts (2d ed) 309, § 44.

The evidence brings the case within the definition of a constructive trust in the Restatement, Trusts 2d,

---

[①] "(1) No estate or interest in real property, other than a lease for term not exceeding one year, nor any trust or power concerning such property, can be created, transferred or declared otherwise than by operation of law or by a conveyance or other instrument in writing, subscribed by the party creating, transferring or declaring it, or by his lawful agent under written authority, and executed with such formalities as are required by law.

"(2) This section does not affect the power of a testator in the disposition of his real property by a last will and testament, nor to prevent a trust from arising or being extinguished by implication or operation of law, nor to affect the power of a court to compel the specific performance of an agreement in relation to such property."

§ 44 (1) (b)[2] as adopted and applied by this court in *Hanscom v. Irwin,* 186 Or 541, 208 P2d 330, and *Marston v. Myers et ux,* 217 Or 498, 342 P2d 1111. Cf. *Shipe et al v. Hillman,* 206 Or 556, 292 P2d 123. There was a confidential relation between Henry and Charles, not only because they were brothers, but also were partners and, in addition, the testimony shows that, while all three brothers gave their full time to the business of the partnership, Henry and Benjamin relied upon Charles to determine the major questions of policy in the conduct of the business of the partnership. There was no express promise by Charles to reconvey, but none was needed. As Judge Cardozo put it in *Sinclair v. Purdy,* 235 NY 245, 254, 139 NE 255, in holding sufficient the evidence of a constructive trust: "Though a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed *(Wood v. Duff-Gordon* 222 N. Y. 88, 91)." As in *Sinclair v. Purdy,* it can also be said of this case that the conveyance "was made as a form, that both so understood it, and that the transaction was consummated in confidence that the holder would keep the faith." Of course, there was in this case no bad faith on the part of Charles, but as we held in *Hanscom v. Irwin,* supra, 186 Or at 564-566, a constructive trust may arise even though at the time of the transfer the transferee in-

---

[2] "(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

"* * * * *

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

"* * * * *."

tended to perform the oral trust. His refusal thereafter to perform is an abuse of the confidence.

It is argued in the opinion of the court that the theory of a constructive trust is not supported because there is no evidence that Charles refused to reconvey to Henry. But Charles' refusal to pay the inheritance tax, when demanded by the State Treasurer, on the ground that the deed from Henry transferred to Charles the entire interest, legal and equitable, in the property amounted to a repudiation of his obligation. Were the court to fail to find and declare the constructive trust thus created, Charles would be unjustly enriched by escaping payment of the tax. In the circumstances disclosed Henry had a beneficial interest in the property at the time of his death and Charles' succession to that interest made it subject to tax under the inheritance tax law of Oregon: *In re Lowengart's Estate,* 160 Or 118, 84 P2d 105.

As I read the opinion of the court it does not hold, though it intimates that it might be held, that Charles was the trustee of a resulting trust. If, as the court determines, there was an express trust, a resulting trust could not have arisen.

> "A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is not otherwise effectively disposed of. Since the person who holds the property is not entitled to the beneficial interest, and since the beneficial interest is not otherwise disposed of, it springs back or results to the person who made the disposition or to his estate, and the person holding the property holds it upon a re-

sulting trust for him or his estate." Restatement, Trusts 2d, 322-323.

In recent cases this court has approved section 405, Restatement, Trusts 2d, which reads:

"Where the owner of property transfers it without declaring any trust, the transferee does not hold the property upon a resulting trust although the transfer is gratuitous."

See *Marston v. Myers et ux,* supra, 217 Or at 509; *Shipe et al v. Hillman,* supra, 206 Or at 564-565. See, also, 4 Scott on Trusts (2d ed) 2923-2924, § 404.1; Bogert, Trusts and Trustees (2d ed) § 453.

Professor Scott and the Restatement say there are three categories of resulting trusts, to-wit: (a) the failure of an express trust; (b) the full performance of an express trust without exhausting the trust estate; and (c) the payment of the purchase price of property by one who directs that title be taken in the name of another. See Scott, op. cit., § 404.1; Bogert, op. cit., § 451; Restatement, op. cit., 323 and Comment a to § 404. Resulting trusts in such instances long have been recognized by courts of equity as arising "by implication or operation of law:" ORS 93.020 (2), and, therefore, not within the statute of frauds. Bogert, op. cit., § 452, at page 503.

The opinion of the court rejects the authority of Scott and the Restatement; I would accept it.

I concur in the result.

I am authorized to say that the Chief Justice and Mr. Justice PERRY concur in the foregoing opinion.