Argued June 8, reversed July 7, petition for rehearing
denied September 6, 1967

LULAY, *Respondent, v.* LULAY, *Appellant.*

429 P. 2d 802

*Duane Vergeer,* Portland, argued the cause for appellant. On the brief were Vergeer, Samuels, Cavanaugh & Roehr, and Walter H. Sweek, Portland.

*Bruce Williams,* Salem, argued the cause for respondents. With him on the brief were Williams, Skopil & Miller, Salem.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

SLOAN, J.

Defendant appeals from decrees which imposed a trust in favor of plaintiffs on certain shares of corporate stock that plaintiffs transferred to defendant in 1947. The evidence as to both cases is identical so they were consolidated for trial and appeal. Since we hold that plaintiffs' claim is barred by laches we will not reach a decision on the existence of a trust.

Some years before 1937 the Lulay Brothers Lumber Co. was formed by defendant and his three brothers. The total capital stock of the company was 160 shares, divided equally between the four brothers. Plaintiff Vincent Lulay, defendant Joseph's son, began working for the company when he was fifteen years old. In 1937, he bought ten shares of the stock from his father, Joseph. In 1940, Vincent married Zelma and transferred five of his shares to her. After 1937, Vincent was considered to be a director of the company. And, except for a few years when he was occupied elsewhere, Vincent continued to work in the woods for the company.

In 1947, Vincent became distressed because he thought that his uncles were not treating his father fairly and that the company did not operate in accord-

ance with Christian ethics that Vincent devotedly believed in. At a meeting of the directors in May of 1947 Vincent became particularly incensed over the way his father was being treated and because the directors would not conform to his ethical standards. It does not appear in the record just exactly what the violations were.

Vincent testified that after the meeting just referred to he remonstrated with his father but that Joseph was unconcerned. About two weeks later Vincent and Zelma went to the father's home and there delivered to Joseph their two certificates of stock, which they had already endorsed, to Joseph. It is this transfer that is in dispute.

Vincent testified that he told his father that he wanted Joseph to have the shares so that Joseph could better protect himself from his brothers and that he, Vincent, would no longer "be guilty of the same crime they were guilty of." Vincent testified that the crime was a violation of the First Commandment, apparently because he thought the other directors were worshiping mammon. He testified that Joseph promised to hold the shares, pay the dividends to Vincent and Zelma and return the shares to them when they should request it.

If Vincent's story is to be accepted, an express trust was created. *Belton v. Buesing*, 1965, 240 Or 399, 409, 410, 402 P2d 98, 103.

Joseph, on the other hand, tells that Vincent handed him the shares, abandoned any further interest in them and said that Joseph could do with them as he pleased. Joseph said that he offered to pay something for them and Vincent refused that. Joseph did continue to hold the shares, he collected and kept whatever dividends were paid and did treat them as his own.

We have concluded that whatever Vincent's and Zelma's rights may be, they have been lost by laches. For the purpose of expressing our reasons for this decision we will assume that a trust was created. If that be so, however, Joseph demonstrated shortly after he received the stock that he did not intend to perform the trust. Vincent relates that in his testimony:

"Q  All right, the same day you handed him the stock. Now at any time after that did your dad account to you for dividends on that stock?
"A  Account to me for dividends?

"Q  Yes, at any time.
"A  Did he?

"Q  Yes.
"A  No.

"Q  Never has, has he?
"A  No.

"Q  Did you ever ask him to?
"A  I did.

"Q  When?
"A  When we were in Portland.

"Q  How long ago was that?
"A  That was in approximately 1952. My wife and I were down visiting.

"Q  And you asked for an accounting for the dividends at that time?
"A  Yes, and stock.

"Q  In 1952?
"A  Approximately.

"Q  Did he ever make any accounting to you for any of this?
"A  The only account—No."

This testimony by Vincent reveals the refusal to account, knowledge on his part that dividends were being

paid and a refusal by Joseph to do anything about the stock. This was in complete violation of the trust as Vincent had described it.

At some later date Joseph gave to his several children at least five and one-half shares of this stock. He gave Vincent two shares. When the gifts were made is not revealed in the record. Vincent testified that he did not know that Joseph was giving the shares to his children.

There is then the conclusive evidence that Joseph violated the alleged trust by keeping the dividends, refusing to account for the dividends and the stock and by making gifts of the stock to others. The evidence is also conclusive that Vincent was fully aware that the trust he claims was being violated as early as 1952.

■■ The law is unmistakable that "A beneficiary may be barred by his laches from holding the trustee liable for a breach of trust." 2 Scott, Trusts (2d ed, 1956) 1609, § 219; Restatement, Trusts, § 219. In this case, Joseph has suffered serious prejudice by the laches. He has given five and one-half shares of the stock to his children. Two of the shares, as we mentioned, were given to Vincent. If Joseph were compelled to now respond to Vincent's demands, it would cost him many thousands of dollars through no fault of his own except reliance on Vincent's silence. It seems too certain to require comment that he would not have been in this predicament except for Vincent's long delay in asserting his claim. And there can be no valid assertion here that Joseph has acted in bad faith in any respect in his disposition of the stock to his children. Bogert say that "The courts are suspicious of claims founded on remote transactions where in the interval the property has greatly increased in value,

502

and the plaintiff made no claim until this change has occurred.*" Trusts & Trustees (2d ed, 1962) § 949, p 451. (*Footnote omitted). This, of course, is true in the instant case.

█ Although no mechanical or inflexible test has been devised for the application of the doctrine of laches, *McIver v. Norman,* 1949, 187 Or 516, at 544, 205 P2d 137, 213 P2d 144, 13 ALR2d 749, all the cases hold that long delay which causes serious harm or detriment to the other party will bar the action. *Brusco v. Brusco,* 1965, 241 Or 550, 407 P2d 645; 27 Am Jur2d, Equity, § 169. We are satisfied that this is a case which the equities require the use of the laches bar.

The decree is, therefore, reversed and the suit dismissed.