**230**

Sophie V. MULLER, Plaintiff,

v.

Benjamin WEINSTEIN, Defendant.

Civ. A. No. 457-62.

United States District Court
D. New Jersey.

June 27, 1963.

James L. Montgomery, Ridgewood, N. J., for plaintiff.

Cole, Berman & Garth, Paterson, N. J., by Leonard I. Garth, Paterson, N. J., for defendant.

WORTENDYKE, District Judge.

This action was instituted on June 1, 1962. The complaint is in four counts. The plaintiff seeks a judgment declaring that she is the equitable owner of certain lands and premises in the Village of Ridgewood, Bergen County, New Jersey, particularly described in the complaint. The legal title to the premises is concededly vested in the defendant; but plaintiff alleges that he holds the title in trust for her. She prays that he be required to reconvey the legal title to her; to give her possession of the premises; to assign to her any lease thereon; and to account to her for rents and profits derived by him from the property.

It is alleged in the first count (and these allegations are incorporated by reference in the succeeding counts) that the premises in question were conveyed by the plaintiff to the defendant at the latter's request, and without realization on her part that the effect of such conveyance was to transfer to the defendant the beneficial ownership of all of plaintiff's remaining real estate in New Jersey. She further claims that this conveyance was induced by the defendant's representations that the documents which she executed, effectuating and in connection with the conveyance, were necessary to

enable the defendant to collect rents from the premises as they accrued and to remit the same to the plaintiff after collection. She charged that her execution of those documents was induced by his misrepresentations and false statements, upon which she relied. (As hereinafter indicated, she withdrew, at the pretrial conference, all charges that the defendant was guilty of any fraud or misrepresentation which induced her execution of the documents.)

In her second count the plaintiff alleges that the defendant had been her agent with respect to the property conveyed, and that by reason of such agency a fiduciary obligation arose requiring the defendant to account to the plaintiff for the rents of the property. She charges that he violated that obligation by refusing to reconvey the property to her when she terminated his agency, and by his failure to account to her for the rents thereof. The third count alleges that her conveyance of the real estate to the defendant was without consideration, and has unjustly enriched him. The fourth count alleges that she was induced to convey the property by the dominance of the defendant, upon whom she relied for advice and assistance.

Although she has withdrawn the charges of fraud, she still contends that she was not aware of the legal effect of the documents which she executed in November, 1947; that she did not realize, until shortly prior to the commencement of this action, that she had conveyed the legal title to the defendant; but believed she had merely entered into a contract of agency, or executed a power of attorney, for the purpose of enabling the defendant to manage the property in her absence, to collect the rents and to account to her therefor. She asks this Court, therefore, to require the defendant to reconvey to her the legal title to the premises, and to account to her for all rents which defendant has collected therefrom. She recognizes, however, her obligation to pay to the defendant reasonable compensation for the services which he has rendered to her in dealing with the property for

her benefit; and she concedes the right of the present tenant to continue to enjoy possession of the premises under the existing lease thereof.

The defendant, answering the complaint, admits that the plaintiff had been the sole owner of the premises described prior to her conveyance of the legal title thereto to him; and that a close friendship had existed between the parties for many years previously. He contends that he is under no obligation to reconvey the property to the plaintiff; claims that he has legal and equitable title thereto; and denies the agency status alleged in the complaint. As affirmative defenses, the answer pleads failure to state a claim upon which relief can be granted, estoppel, laches, and the statute of frauds. The defendant also counterclaimed against the plaintiff for damages alleged to have resulted from wilful and malicious acts and statements of the plaintiff which prevented him from consummating a sale of the property, which he had an opportunity to accomplish. On appropriate motion, at the close of all of the evidence, the Court dismissed this counterclaim, with prejudice, for insufficiency of proof.

Shortly after the institution of the present action, Mrs. Muller instituted another action against the present tenant of the property. In that action Weinstein was joined as a third-party defendant. (C–696–62 Muller v. Ridgewood-Franklin Co. v. Weinstein). In the latter suit, Mrs. Muller prayed judgment that she be declared to be the lessor in the lease from Weinstein to Ridgewood-Franklin Co.; that the tenant be required to pay her the rents called for under that lease; and that it be enjoined from paying any of said rents to Weinstein. By this Court's order of September 24, 1962, Mrs. Muller and Benjamin Weinstein were required to interplead their respective claims to the fee of the demised lands, and to the rent due and to grow due therefrom, under Weinstein's lease to Ridgewood-Franklin Co.; Ridgewood-Franklin Co. was required to pay all such rents into the registry of the Court; and

Mrs. Muller and Mr. Weinstein were temporarily enjoined from instituting or prosecuting any proceedings against Ridgewood-Franklin Co. based upon its lease from Weinstein. That action (C-692–62) was consolidated with the captioned action of Muller v. Weinstein. The determination of the Ridgewood-Franklin case is necessarily dependent upon my decision in the instant case.

The pretrial conference in this case required two sessions. One was held on October 22, 1962, and the other on February 27, 1963. At the former, the plaintiff contended that the transfer of title to the defendant of the real estate in question in this case was "a result of misrepresentations and false statements made by Weinstein." At the pretrial conference session of February 27, 1963, the plaintiff contended that Weinstein became her trustee with respect to the lease entered into by Weinstein with Ridgewood-Franklin in September of 1952, covering lands described in the deed of November 12, 1947. While still asserting that she is the sole beneficial owner of the premises conveyed by the deeds of November 8 and 12, 1947, "she expressly disclaims * * * any fraud on the part of or chargeable to the defendant; anything in the complaint to the contrary notwithstanding." She conceded the genuineness of her signature on each of the documents which she is alleged to have executed in November, 1947, but she insists that she has no recollection of having executed them, and that she did not understand that the effect of the deeds was to vest title to the premises described therein in Weinstein. She testified that, at the time the documents were executed, she was about to enter a hospital for surgery, and that she merely intended to employ the defendant as her agent to collect the rents under the then existing lease. She further contended that, upon the termination of the so-called Arlaura lease, Weinstein's efforts to sell or relet the premises were performed as her agent, and that he became accountable to her for the rents from Arlaura, and subsequently from Ridgewood-Franklin, the succeeding lessee. She concedes that there was an hiatus between the termination of the Arlaura lease and the commencement of the term of the subsequent Ridgewood-Franklin lease, during which interval no rents accrued from the premises in question.

Weinstein equates the November 1947 transactions with Mrs. Muller to a prepaid annuity arrangement, i. e., that the consideration for the conveyance of the premises and the assignment of the lease was his agreement that she should receive from him and from his heirs, for and during her lifetime, the sum of $1,000 per annum. He denies any undertaking or intention to act as her agent, whether in contemplation of compensation for his services or otherwise; and asserts that whatever services he may have rendered to her were induced by his feeling of good-will, which had developed during his long friendship with her and with each of her husbands during their respective lives, and in recognition of the many good deeds which she and each of her husbands had done for him. Weinstein denies that the transaction of November 8, 1947 resulted from any influence, persuasion or other form of overreaching on his part. He testified that the documents reflecting the transaction were drawn by Michael A. Dwyer, Esq., an experienced, ethical member of the New Jersey Bar, acting as her attorney, and in compliance with her instructions, and that the documents were executed by her not only with adequate professional advice from Mr. Dwyer, but contrary to his (Dwyer's) recommendations. Weinstein claims that he has paid to Mrs. Muller, since November 8, 1947, a minimum of $1,000 per year, and in many instances in excess thereof, to an aggregate total exceeding $17,000.00.

## FINDINGS OF FACT

1. The plaintiff is a citizen of Florida; the defendant a citizen of New Jersey. She (the plaintiff) is a widow now 79 years of age, and he (the defendant) a bachelor 10 years younger.

2. Plaintiff was married to Louis Vogler and together they operated a roadstand type restaurant on the premises in dispute on the Franklin Turnpike, in Ridgewood, New Jersey, during the 1920s, and up to the time of Louis Vogler's death on February 8, 1934. The defendant operated an automobile service station nearby, and he and the Voglers were friends, as well as reciprocal customers. Mrs. Vogler (plaintiff here) continued to operate the restaurant after the death of Mr. Vogler until 1937, when she leased the property to one Charles Gasser, at a rental of $1,200 per annum. In the same year she moved to Florida where she has continued to reside up to the present time.

3. On August 1, 1941 plaintiff married John P. Muller, a widower, with whom she lived in Florida until his death, on April 18, 1947. During the period of her marriage to Mr. Muller, they remained on the same friendly terms with the defendant as had existed between the parties to the present action before her second marriage.

4. In 1935, 1937 and 1941 plaintiff conveyed various parcels of New Jersey realty to the defendant, without monetary consideration, and for which she has never sought payment; and in 1944, with her husband, executed another conveyance which confirmed all previous deeds.

5. Over the many years of the friendship between the parties, defendant performed numerous small services for the plaintiff, particularly relating to such properties as she then owned in New Jersey. He would, for example, drain the water pipes in her home in Ridgewood to prevent freezing during the winter, care for plants, arrange for fuel oil deliveries, and collect rent from tenants and transmit it to her. In 1944 the defendant telephoned to the plaintiff in Florida and asked her to come north to lease the restaurant property to Arlington C. Hall, whom he knew, and who was associated with Howard Johnson. Negotiations were accordingly entered into between Mr. Hall and Mr. and Mrs. Muller which culminated in a lease, signed on July 6, 1945, in the offices of Michael A. Dwyer, Esq. Mr. and Mrs. Muller were the lessors and Arlaura Realty Company, a corporation controlled by Mr. Hall, was the lessee. The lease provided for an annual rental of $1,000 plus payment of taxes by the lessee, and certain other requirements, including the construction by the lessee of a building on the property, to cost not less than $10,000 and to be erected by July 1, 1949, as well as the demolition of the restaurant structure then standing on the property. The lease also contained a covenant by the lessee not to use or suffer any person to use the premises for a gasoline service station.

6. On October 1, 1945 Mr. and Mrs. Muller executed a joint will in which they named the defendant and one Bernard Lamb co-executors. By the terms of that will each testator devised the property of the first deceased to the survivor, and further provided that upon the death of the survivor, $1,000 of the remaining assets should be paid to Benjamin Weinstein (the present defendant) with the remainder to Mr. Muller's children by his previous marriage.

7. On October 18, 1946, plaintiff sold her home in Ridgewood, New Jersey, with the aid of the defendant. She was represented in that transaction by a Mr. LeClare.

8. After the death of Mr. Muller on April 18, 1947, the plaintiff made defendant the beneficiary of a $500 insurance policy upon her life, and turned over to him the deed to a burial plot so that he might properly arrange for her burial upon her death.

9. In November of 1947, the plaintiff, then 63 years of age, learned that she was to have a gall bladder operation, and on November 8 she asked the defendant to drive her to the office of her attorney, Michael A. Dwyer, Esq., where she requested the attorney to prepare three documents for her,—a deed to Weinstein for a tract of land of approximately three acres in the Village of Ridgewood, fronting on Franklin Turnpike, (part of which had previously been deeded to defendant and remainder being the tract leased to

Arlaura); an assignment to Weinstein of the Arlaura lease entered into in 1945 covering most of said property; and an agreement between the present parties requiring the defendant "to pay over all rents collected by him on said lease to the said Sophie B. Muller, during her lifetime." This contract further provided that "this obligation is to cease upon the death of said Sophie B. Muller and the said Sophie B. Muller hereby agrees to accept said rents collected by the said Benjamin Weinstein, or his heirs, during her lifetime, and that any and all rents accruing after her death are to become the sole and absolute property of the said Benjamin Weinstein." The words "or his heirs" were inserted in her handwriting after the agreement had been typed, and the insertion is authenticated by the respective signatures of the two parties in the margin of the page on which it was made. Although this agreement only specified that the defendant was required to pay over rents under the Arlaura lease, the defendant has considered himself obligated thereby to pay to the plaintiff a thousand dollars per year while she lives. Defendant has paid to the plaintiff a minimum of $1,000 per year up to the time of the institution of the present litigation.

10. Mr. Dwyer had previously represented the plaintiff in connection with her execution of certain documents, viz., the lease entered into with Arlaura Realty Co., the contract for the removal of the old restaurant building, and the deed whereby she transferred a certain parcel of realty to Willie Vogler, a relative of her first husband.

11. On November 8, 1947 plaintiff understood the import of the documents which she executed and did so fully knowing and intending to vest ownership of the property in the defendant, subject to her right to the income therefrom for as long as she should live. The Arlaura lease was originally for a term of 99 years, and on November 8, 1947 had an unexpired term of approximately 97 years. It was not contemplated by either of the parties at that time that the rents from the property would ever exceed the net rental provided therein of $1,000 a year, or that the lease would be terminated during the lifetime of either of them.

12. I find that at the time of the conveyance and agreement, the fair market value of the property conveyed, with the benefits of the Arlaura lease, was between $17,000 and $18,000. At that time the projected then present value of the property at the termination of the 99 year lease was $60.00.

13. I further find that the execution of the three documents of November 8, 1947 was induced by the plaintiff's awareness that she was facing surgery and by her desire to avoid passage of the title to the property to her step-children in the event of her death, the joint will of herself and John Muller being then still in effect in that respect. Additionally I find that for as long as she should live she desired to utilize the services of Mr. Weinstein by having him collect the rents and transmit them to her without charge, she being reluctant to pay an agent the customary fee of 5% charged for such services as Mr. Weinstein was to undertake. All of these reasons led to the execution of the documents in question, without any suggestion or inducement by the defendant upon her to do so.

14. On November 12, 1947 another deed of conveyance was made by Mrs. Muller to Weinstein, in which the description included only the parcel covered by the Arlaura lease, which was part of the total three acre parcel deeded to him on November 8th.

15. On November 21, 1947, plaintiff executed a new will upon her own volition, by the terms of which Benjamin Weinstein was made sole beneficiary of her estate; her attorney in that connection was Peter Hofstra, Esq.

16. On August 9, 1948, the defendant extended the time for the construction by Arlaura of a building upon the leased property from July 1, 1949 to July 1, 1952. With the execution of this modification, he received a check from the les-

see in the amount of $3,000, marked "rent in advance for the years 1949, 1950 and 1951". Of this sum, $1,000 was sent to the plaintiff by the defendant by a check marked "Advance rent from Arlaura Realty Corporation for 1949". At some time during that three year period, Arlaura requested a release from its obligation under the lease, to which the defendant acceded, and no further rents were paid thereunder.

17. On September 10, 1952, the defendant negotiated a lease of all but a small strip of the property described in the Arlaura lease to Ridgewood-Franklin Company, for a period of 99 years from the date thereof, at an initial net rental of $1,850 to be increased to $2,000 after five years, thence to $2,250 after 10 years, and ultimately to $2,500 a year after 20 years. In compliance with the terms of that lease, the tenant built a substantial business building upon the property. Upon the execution of that lease, Weinstein received from the tenant $3,700 as advance rental payment for the first and fifth years. It was further agreed by the parties to that lease that commencing on September 15, 1953, and on September 15th of each year thereafter, the rent would be paid in annual instalments (with the exception of the fifth year, which was prepaid). The lease described the rental fixed as a net rental to continue to be paid irrespective of the construction or demolition of the building to be erected on the property pursuant to the provisions of the lease. The instrument also contained a covenant by the lessee that neither the premises nor any building or improvement thereon would be used for a garage or gasoline service station; and contained an option to the tenant exercisable within the first twenty years of the term of the lease, to purchase the demised property for $45,000.00. Mrs. Muller was not a party to this lease, nor was she aware of the specific provisions thereof. However, the defendant informed her by 'phone in 1952 of the termination of the Arlaura lease, and of his plans to relet the premises to the Great Atlantic & Pacific Tea Company (Ridgewood-Franklin). She approved of his plans and told him to proceed, upon Weinstein's promise that he would send her the increased rent under the new lease in monthly installments. She never received the full amount of the rentals from the Ridgewood-Franklin lease, although she has continued to receive at least $1,000 a year, and in many years, monthly checks in the amount of $110.00. In addition, the defendant, on certain occasions, has sent her lump sum amounts of from two to three hundred dollars, not derived specifically from payments under the lease. All payments were made by defendant's personal checks and never by those of Ridgewood-Franklin.

18. After Mr. Muller's death in 1947, the parties to this action continued their friendship. They engaged in frequent correspondence, and he was often a house guest in her Florida home during the winter seasons. On such occasions, it was his practice to pay her enough to defray the extra expense and trouble incurred by his visit, approximating $50 for a three to four week stay. The defendant visited plaintiff annually from 1948 through 1959. During the winter of 1961–62, plaintiff asked Mr. Lamb, a mutual friend of long standing of both parties to this action, who had written that he was leaving for Florida on January 19, 1962, to inquire of the defendant whether he was planning to visit her that winter. Mr. Lamb complied with this request and reported to plaintiff that the defendant, when questioned about his intentions, expressed disinclination to visit her, and referred to her in unflattering terms. I find that this termination of the defendant's visits to plaintiff's home in Florida, in conjunction with the comment he reputedly made in response to the questioning of Mr. Lamb, which comment was reported to the plaintiff, precipitated the present litigation.

19. I do *not* find that plaintiff first became aware that she was no longer the holder of legal title to the realty in question in 1962; but rather find that the proof establishes that she knew on No-

vember 8, 1947, and at all times subsequent thereto, that she no longer owned the fee.

20. Upon the trial, Mrs. Muller appeared, and I find her to be, a woman of vigor, intelligence, acquisitiveness, thrift and strength of will, who is unusually businesslike and resourceful for her age. There is no reason to infer that her mental acuity was any less on November 8, 1947, when the documents complained of were executed. I find no support in the evidence for her contention that she thought she was entering into an agency agreement at that time. She must have known the legal effect of her acts, having on at least three prior occasions transferred real property by the execution of deeds. Moreover, her attorney, Mr. Dwyer, testified, and I find that he had discussed the conveyance with her and had recommended against it; but that she insisted upon entering into the arrangement of which it was an essential part.

21. At the time these documents were executed in November of 1947, the plaintiff also owned real property in Florida where she resided, which she had originally purchased for $15,500. Her other assets included cash amounting to approximately $1,000, Postal Savings of approximately $500, and other miscellaneous personal property, in addition to the annual rent of $1,000 under the Arlaura lease, which Weinstein agreed to collect and pay over to her.

22. The Ridgewood-Franklin lease encompasses a slightly smaller parcel of land than that which was leased to the Arlaura Realty Company. The property comprising the difference between the two parcels was never productive of income, but was used by the defendant as an appurtenance of his own business premises.

## DISCUSSION

Both parties to the agreement of November 8, 1947 justifiably contemplated that the Arlaura lease would continue to run and to yield the stipulated rent of $1,000 per annum throughout the lifetime of each of the parties. When the Arlaura lease terminated a few years later, the rent, which Weinstein had agreed to collect and pay over to Mrs. Muller, ceased. Weinstein, however, could not, in equity and good conscience be heard to insist that, because the agreement of November 8, 1947 obligated him to pay over the rent *from the Arlaura lease,* he had no further obligation to the plaintiff following the termination of that lease, particularly in view of the fact that he was a party to the termination of the Arlaura lease. He must have recognized that there persisted an obligation to the plaintiff on his part with respect to the rental value of the property, because he continued to pay to Mrs. Muller, after the termination of the Arlaura lease, the amount which he had previously been paying to her while the lease remained in effect. Since he recognized this persistence of her interest in the rents of the property, despite the termination of the Arlaura lease, he was under the equitable duty, as trustee for Mrs. Muller of the rental income from the property, to obtain a new source of rents by reletting the property to a new tenant. He did so, and that with her consent and approval. He was successful in reletting it at a higher rent. By virtue of his trusteeship, he became obligated to turn over the rent under the new lease to Mrs. Muller. Otherwise, he would be unjustly enriching himself at her expense. Having become, by operation of law, trustee of the rental income from the property for her benefit, the increased rental obtained from the new tenant became part of the trust res to which she became exclusively entitled. This determination necessarily follows this Court's conclusion of the constructive trusteeship of the defendant to the plaintiff, to prevent the unjust enrichment which would accrue to the defendant were the Court to determine otherwise.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such

circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." Cardozo, J., in Beatty v. Guggenheim Exploration Co., 225 N. Y. 380, 122 N.E. 378, 380.

(Cited with approval in Moses v. Moses, E & A 1947, 140 N.J.Eq. 575, 53 A.2d 805, 808, 173 A.L.R. 273.) See also Texas Company v. Miller, 5 Cir. 1947, 165 F.2d 111, 116.

▮ In support of her contention that the property in dispute should be reconveyed, plaintiff relies on certain equitable doctrines well established in New Jersey. "The principles here involved are those relative to transfers from the subordinate one of two persons, between whom exists a relationship of trust and confidence, to the dominant one. Where such a transfer has been made, it is voidable * * * at the instance of the the transferor * * * if there was any deception, if there was any undue influence, if there was any unfairness, any concealment, any coercion, or if the transaction was not thoroughly understood by the transferor." In re Fulper's Estate, E & A 1926, 99 N.J.Eq. 293, 132 A. 834, 839. In such a case there is a presumption in favor of the transferor with regard to such elements as are stated above, which the transferee has the burden of overcoming. In our case such burden has been fully discharged by the defendant in that the evidence has established to my satisfaction that the agreement was fair, not the result of any concealment, coercion, deception, or undue influence, and was thoroughly understood by Mrs. Muller.

An allied doctrine first established in this State in Haydock v. Haydock, E & A 1881, 34 N.J.Eq. 570, teaches that, "[w]here parties hold positions in which one is more or less dependent upon the other, courts of equity hold that the weaker party must be protected, and they

set aside his gifts if he had not proper advice independently of the other." Subsequently this language was modified in Post v. Hagan, E & A 1907, 71 N.J.Eq. 234, 65 A. 1026, wherein the court limited this rule of "independent advice" to those cases were the transferor leaves himself without means of support. It is this modification which makes the theory there recited inapposite to the facts in our case, because here Mrs. Muller retained a life interest in the property, and was also possessed of other property, so that she was not without means of support.

More nearly analogous to our case is that of Griffiths v. Griffiths, E & A 1948, 142 N.J.Eq. 751, 61 A.2d 249. In that case the transferor was "irritated because he was compelled to pay an inheritance tax on property which he felt belonged to him" and determined to convey the legal title to the property to his son. In conjunction with the deed, agreements were entered into between the son and daughter-in-law and the grantor. The son agreed, with his wife who was also a grantee of the property, that said property would be used for the "interest, comfort and convenience" of the grantor. At all times thereafter the income from the property was used for the benefit of the transferor. The dispute arose when the holders of the legal title refused to convey said property to an offeror obtained by the beneficial owner, who in the action, and as a result of the refusal referred to sought, a reconveyance of the property and a rescission of the agreements. The Court refused the relief prayed for, holding that "the instruments accurately set forth the intent and desire of the complainant. He wanted his son to have the title subject to his life estate and that is what was accomplished. The transaction was entirely voluntary and was absolute in form. It cannot be revoked. (Citing cases.)"

CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter. 28 U.S.C. § 1332.

2. The Court has jurisdiction of the parties.

3. The property interest conveyed by the plaintiff to the defendant by the deeds of November 8 and 12, 1947 was a gift of the fee of and reversion in the real estate described in the Arlaura lease of July 6, 1945, subject to the right of the plaintiff to receive the gross rents under the lease for her life.

4. By their agreement of November 8, 1947, the parties expressed their mutual intention that plaintiff should receive the gross income from the property as long as she lived.

5. Plaintiff's gift to defendant of the fee and reversion of the real estate was not improvident nor induced by undue influence exerted by the defendant; nor the result of ignorance, mistake or incompetence on the part of the plaintiff.

6. When Arlaura Realty Company notified defendant of its desire to terminate the lease, it was reasonable for the defendant to accede to its request, thereafter replacing said lease with the more advantageous one presently encumbering the property, which benefit enures to both himself (after plaintiff's death) and to the plaintiff during her lifetime.

7. Both parties having agreed to the making of the new Ridgewood-Franklin lease, neither may now disaffirm it. By her authorization to Weinstein to enter into the Ridgewood-Franklin lease in consideration of his agreement to pay the rents therefrom to her, Mrs. Muller consented to a modification of the agreement of November 8, 1947, and thereby transferred his obligation thereunder from the Arlaura to the Ridgewood-Franklin rents. In the light of the terms of the original agreement between the parties supplemented by this modification thereof, it necessarily follows that plaintiff is entitled to all of the rents payable under the Ridgewood-Franklin lease for the duration of her life.

8. Because the amounts heretofore paid over by the defendant to the plaintiff are admittedly less than the total of rent payments which he has received, and because certain charges paid by him may be assessable against the interest of the plaintiff, an accounting must be had to determine the exact amount which may be due and owing from the defendant to the plaintiff since the termination of the Arlaura lease.

9. Plaintiff having agreed to the new lease (which provides for annual rental in excess of that under the Arlaura lease) she may not be heard to complain that the small parcel of land not covered by the Ridgewood-Franklin lease, which has never been the subject of any other lease, or productive of any income, should have been let to produce additional income for her. Additionally, in this connection, no proof has been submitted that the parcel in question was capable of being rented.

10. Defendant is vested with and may continue to hold the legal title to the property in question, and plaintiff is not entitled to a reconveyance of the title, or to an assignment of the Ridgewood-Franklin lease, which defendant holds as constructive trustee for plaintiff.

11. The action brought by the plaintiff against Ridgewood-Franklin, in which Weinstein has been joined, (C–692–62), must be dismissed upon entry of final judgment herein, following the accounting hereinabove directed, which shall provide, inter alia, for the distribution of the funds paid into the registry of this Court under this Court's order of September 24, 1962.

12. This Court's determination herein that title remains in Benjamin Weinstein requires the continued payment to him of the rents under the Ridgewood-Franklin lease, but, he shall collect those rents for the benefit of and pay them over to the plaintiff through the duration of her life.

13. Although not specifically prayed for in her complaint, the relief which I have granted is comprehended within her prayer for general relief appropriate in the circumstances.

Let an order in conformity with this opinion be presented.